OVERTON, J.
The defendant was tried on a bill of information charging him with unlawfully having in his possession intoxicating liquor for beverage purposes, upon which charge he was convicted, and now appeals.
Defendant did not ask for a bill of particulars to require the state to declare what kind of intoxicating liquor it intended to prove was possessed by him unlawfully for beverage purposes, but filed a motion to quash the bill of information, based on the ground that Act No. 39 of 1921, the act under which he was being prosecuted, is unconstitutional, because it attempts to define the words “intoxicating liquor” by reference to federal legislation, in violation of section 18, article 3, Constitution of 1921.
Defendant does not seriously press the above bill, for, since its presentation to -the trial judge for signature, this court has decided that the reference to federal legislation is not in respect to the nine liquors well known to be intoxicating, and expressly named as such, in the act, but to the other liquors and liquids therein mentioned, and that the reference, even though it should be unconstitutional, would not affect the validity of the act in respect to the nine specifically declared to be intoxicating. State v. Coco, 152 La. 241, 92 South. 883. And in State v. Cleary, 152 La. 265, 92 South. 892, it was held, citing the Coco Case, that it was sufficient, in the indictment or information, to prefer the charge in the words of the statute, denouncing the offense, and for that reason it was unnecessary to specify the kind of intoxicating liquor that defendant sold, at least, unless defendant required the state by means of a motion for a bill of particulars, to furnish that information; and it may be said that the same is true, where the charge, as in this case, is the unlawful possession, for beverage purposes, of intoxicating liquor. In such cases, as stated in State v. Cleary, this court will not presume that the liquor charged was not one of the nine liquors specifically named in the act as intoxicating, and concerning which no reference is made to federal legislation to determine whether or not they are intoxicating, to wit, alcohol, whisky, brandy, rum, gin. beer, ale, porter, or wine. If a defendant, in *891 a case in which the bill of information or indictment fails to state the kind of liquor possessed, sold or manufactured, wishes to attack the constitutionality of the reference to federal legislation, he should m'ake it appear that he has an interest in doing so by requiring the prosecution, by means of a motion for a bill of particulars, or otherwise, to state the kind of intoxicating liquor that he is charged with having sold, manufactured, or possessed; and if it then appears that the liquor is one of those to which reference is made to federal legislation, to ascertain whether it is intoxicating, the defendant will have a standing to test the constitutionality of that reference, otherwise not. It may be said that the defendant, in this case, has ■lost nothing by failing to file a motion for such a bill, since it appeared on the trial that the liquor was whisky, which is one of the liquors specifically declared, in the act, to be intoxicating and is well recognized as such.
The second bill of exception is reserved to the refusal of the judge to order the evidence of the witnesses for the state to be reduced to writing. The judge states that:
“At the beginning of the trial counsel for the accused, without knowing what the state’s witnesses were going to swear, made the unusual and, as the court views it, the unwarranted, request -that the testimony of the state’s witnesses be taken down by the court stenographer or by the clerk in longhand. This request was denied, with the permission for his own .stenographer to take it down, and with his right reserved to have the clerk take down any objectionable testimony for the purpose of taking as bill of exception. This right was made use o'f by the accused in bills Nos. 3, 4, and 5.”
The ruling of the court, in refusing the request, was proper. State v. Lowry (No. 25461) 153 La.-, 95 South. 596, this day decided.
Bills of exception Nos. 3 and 5 may be considered together. In the first one mentioned, it appears that the state asked the witness, Bryant Sholars, a deputy sheriff of the parish in which the offense is charged to have been committed, ’ the following question, referring to a search warrant, to wit: “I will ask you, did you serve this warrant?” In the second of the bills mentioned, it appears that R. E. Boyett, a deputy sheriff of the same parish, was called to the witness stand to prove the result of a search of defendant’s residence, which was made under a search warrant. Both the question propouhded and appearing in the bill first mentioned, and the evidence of Boyett as to the result of the search, brought before this court, in the second bill mentioned, were objected to by defendant on the ground that the warrant was issued by the justice of the peace of ward 1 of Winn parish to search the residence of defendant in ward 7 of that parish, instead of by the justice of the peace of the ward in which defendant’s residence is located. The objection was overruled in both instances, and the evidence was admitted.
The position of the defendant is that the justice of the peace of ward 1 has no jurisdiction to issue a warrant to search a residence located in another ward of the same parish, and that evidence obtained by a search made thereunder is inadmissible; the search being in contravention of the Constitutions of this state and of the United States.
The first question to be disposed of under this bill is whether the justice of the peace of ward 1 had jurisdiction to issue the warrant. Section 7 of article 1 of the Constitution of 1921 provides:
“The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no1 such search or seizure shall be made except upon warrant therefor issued upon probable cause, supported by oath or affirmation, and particularly describing the place *893 to be searched and the persons or things to be seized.”
This section prohibits unreasonable searches and seizures, and prohibits them under all circumstances, unless made under the authority of a warrant, and prohibits the issuance of a warrant, except upon probable cause, supported by oath or affirmation, but it does not- undertake to provide what authority may' issue it. This is left to the Legislature.
Act No. 39 of 1921, under which defendant is being prosecuted, provides for the issuance of search warrants, in aid of the enforcement of the act. It is there provided that no residence shall be searched, except upon the affidavit of two reliable persons, showing that they have reasons to believe and do believe that it “is being used as a cloak or cover” for the violation of the act, and showing the specific offense that is being committed therein, together with such additional corroborating evidence as the court, in the exercise of of its discretion, may require. When the warrant issues, the officer to whom it is directed is required to seize all intoxicating liquors found on the premises, and such apparatus and equipment found thereon as is designed or intended to be used in the manufacture and sale of such liquors, and to apprehend the keeper of the place, or the person to whom the liquor belongs, and take him before the court that issued the warrant, to await its further orders. -This warrant may be issued, under the act, only by “a competent court having the power of a committing magistrate.” Section 5, Act 39 of 1921.
From the above provisions of the act, we conclude that the court that issues the warrant must have the powers of a committing magistrate in respect to the particular offense, to secure evidence concerning which the warrant issues, and therefore that it is not sufficient that it have jurisdiction, as a committing magistrate, in a general sense, or merely because of the nature of the offense, but it must have jurisdiction also because of the place where the offense was committed, if committed. We are supported in this construction by the fact that the act does not merely provide that the warrant may be issued by a court having the powers of a committing magistrate, but, as provided by the act, the court must be a competent one having such powers. Under the familiar rules of construction, some effect, if possible, must be given the word “competent,” and we know of no other effect to be given it, in such a connection, than that resulting from the construction we have placed upon it.
We are further supported in the conclusion we have reached by the fact that after the officer has executed the warrant, and finds evidence of the violation of the act, he is required to apprehend the keeper of the place, or the owner of the liquor, and take him before the court, issuing the warrant, to await its further orders. While the act does not expressly state the purpose of taking him there, other than to await the orders of court, still it is manifest that the purpose is that, if a preliminary trial should be desired, it may be granted, or if none should be desired, and the person apprehended should desire bond, the committing magistrate may fix his bond and release him thereon. We are further supported in our conclusion by the observation that, while justices of the peace are given jurisdiction, as committing magistrates, in cases not capital or. necessarily punishable at hard labor; yet this jurisdiction, we think, in the absence of anything to the contrary, is confined to their respective wards. We so think, because the Constitution provides for the creation of justice of the peace wards, recognizes those now in .existence, until changed, and provides that justices of the peace shall be elected “by the qualified voters within the territorial limits of their jurisdiction.” It is manifest that *895 by the “territorial limits of their jurisdiction” is meant their respective wards, and the boundaries of each ward, therefore, fix, under the expression used, the extent of that phase of their jurisdiction. Sections 46, 47, and 48 of article 7, Constitution of 1921.
The law regards, as the venue of a criminal case, for the purposes of granting bail or a preliminary trial, or issuing a commitment, the place where the offense was committed. We therefore conclude that it is necessary to the issuance of a search warrant, to search a residence, under Act 39 of 1921, that the offense that is being committed, to obtain evidence concerning which the warrant is authorized to issue, must be one that is being Committed within the territorial jurisdiction of the court issuing itf and since that act prohibits the issuance of the warrant, except upon proof that an offense, under the act, is being committed in the residence to be searched, and that the residence is being used to cloak the commission of the offense, it follows that the location of the residence, in effect, fixes the venue of "the offense; and therefore determines what justice of the peace court may issue the warrant. We therefore conclude that the justice of the peace court of ward 1 of Winn parish was without power to issue the warrant to search a residence in ward 7 of that parish to secure evidence of an offense that was being committed in the residence located in the latter ward.
However, because the warrant was illegally issued,- it does not follow that the evidence obtained under it is inadmissible. There is nothing in section 7 of article 1 of the Constitution of 1921, the only article dealing with the question, to the effect that evidence obtained, under such a warrant, shall not be admissible, nor that evidence obtained by a search made without a warrant shall not be received. Nor is there anything in Act 39 of 1921 to that effect, nor in any other’ law of the state.
Prior to the adoption of the present Constitution, it was held by this court that evidence obtained by the search of one’s premises without a search warrant was not for that reason inadmissible. City of Shreveport v. Knowles, 136 La. 770, 67 South. 824; City of Shreveport v. Marx, 148 La. 31, 86 South. 602.
In the Constitution of 1913, under which Constitution the above decisions were rendered, the guaranty against unlawful seizures is almost word for word, and in substance is the same, as in the present Constitution. Article 7, Constitution of 1913, and section 7 of article 1 of the Constitution of 1921. It is fair to presume that the members of the constitutional convention of 1921 were familiar with the above jurisprudence. An effort was made to incorporate in section 7 the following provision, evidently for the purpose of bringing about a different interpretation of the article, to wit:
“And no evidence obtained by unlawful seizure may be used against any person accused of crime.” Journal of Convention, p. 423.
But the effort was defeated.
In a case which arose after the adoption of the Constitution of 1921, and involved the question of the admissibility of 'evidence obtained by unlawful search and seizure, and the right of the- state to retain as evidence articles seized, which had been delivered to it, by those making the seizure, the history of the adoption of section 7 was reviewed, and it was held that the state did not have to return the articles, but could retain them as evidence, to be used on the trial. State v. Fleckinger, 152 La. 337, 93 South. 115. Since then the admissibility of such evidence has been recognized in the following cases: State v. Zeblit (No. 25380) 152 La. 594, 93 South. 912, and State v. Lowry (No. *897 25461) 95 South. 596,[1] this day decided. See also, a full discussion of the question by Wigmore, author of Wigmore on Evidence, in an article appearing in the American Bar Association Journal, published at Chicago, of date August, 1922; the title of the article being “Evidence Obtained by Unlawful Search and Seizure.”
The Fourth Amendment to the Constitution of the United States, relied upon in part by defendant, under which conclusions different, in some respects, have been reached from those reached under the Constitution of this state, is applicable only to such questions in the federal courts, and not in state courts, and does not, in any respect, affect the right of a state to admit evidence obtained from a residence, by search, made without a search warrant. State v. Fleckinger, cited supra, and authorities therein cited.
We therefore conclude that the evidence objected to was properly admitted.
While Bryant Sholars was on the witness stand, the state sought to elicit from him evidence showing that an empty barrel was found about 300 yards from the house, lying in the branch of a creek, and also some burnt coals on the ground near the barrel. Defendant contends that the purpose of the evidence was to leave the impression that he had operated a still there, and that he was being tried, not for the manufacture of whisky, but for having it unlawfully in his possession for beverage purposes, and that, therefore, the evidence was irrelevant.
The trial judge advises us that the officers found, in defendant’s smokehouse, 6 or 8 half gallon new fruit jars, one of which was about half full of white corn whisky, and that they testified that the others had the smell of whisky. The judge further advises us that defendant testified that he obtained a gallon of white corn whisky from a negro, who had since been killed, to be used by his father as medicine for rheumatism, and, we gather from the record, that defendant’s position was that he had obtained the whisky for that purpose on the advice of a physician. The evidence as to the barrel and charcoal, when considered in connection with the finding of the new fruit jars, one of which contained whisky, and the others the odor of whisky, had a tendency to disprove the statement of the defendant, in relation to the acquisition of the whisky, and it was for that reason that the trial court admitted it. The ruling was correct.
For the reasons assigned, it is ordered, adjudged, and decreed that the judgment and sentence appealed from be affirmed at defendant’s costs.
O’NIELL, J., being absent from the state, takes no part in the decision of the case.

 153 La. —.