O’NIELL, C. J.
 

 The defendant has appealed from a conviction and sentence for having intoxicating liquor, called moonshine whisky, in his possession for beverage purposes.
 

 When the bill of information was filed in the district court, and before the case was called for trial, the defendant asked for an order of court to forbid the district attorney to offer the whisky in evidence or to offer any proof of the finding of the whisky in the defendant’s possession. He alleged — and the fact is not disputed — that, on the date.stated in the bill of information, the sheriff, with two deputies and the town marshal, called at defendant's residence, in the nighttime, during his absence, and exhibited to his wife what the sheriff pretended was a warrant authorizing a search of the house, and that she permitted the officers to enter and search the house, where they found and seized the whisky. It was alleged in the defendant’s motion — and is admitted — that the document which the sheriff pretended was a search warrant was not signed by a judge or committing magistrate. In fact, it was not signed by any one.
 

 The defendant’s contention was that the introduction of evidence discovered by an unlawful search and seizure would "be violative of the Fourth and Fifth Amendments of the Constitution of the United States, and violative of sections 7 and 11 of article 1 of the Constitution of the state, and- of section 5 of Act 39 of 1921.
 

 The district judge overruled the defendant’s motion, and his attorney reserved a bill of exception to the ruling. On the trial of the case, the attorney repeated his objection to the offering of the whisky in evidence, and to the testimony of the officers who had made the unlawful search and seizure. The objections were overruled; ' the evidence was introduced; and the attorney again reserved bills of exception.
 

 The question presented by the bills of exception is whether evidence of the commission of a crime is not admissible against a person accused of the crime, if the evidence was procured by an unlawful search and seizure by an officer of the law. The .question is not new. We have decided several times that the fact that evidence of the commission of a crime or misdemeanor was obtained by an unlawful search and seizure by an officer of the law does not affect the question of admissibility or worth of the evidence against the person on trial for the crime or misdemeanor. City of Shreveport v. Marx, 86 So. 602, 148 Da. 31; State v. Fleckinger, 93 So. 115, 152 Da. 337; State v. Zeblit, 93 So. 912, 152 Da. 594; State v. Mims, 95 So. 264, 153 La. 9; State v. Dowry, 95 So. 596, 153 Da. 178; State v. Davis, 97 So. 590, 154 Da. 405.
 

 AAre are reminded by the learned counsel for the appellant that the Supreme Court of the United States holds that it would be violative of the Fourth and Fifth Amendments
 
 *243
 
 of the Constitution of the United States to allow evidence obtained by an unlawful search and seizure to be used against a person accused of crime, Boyd v. United States, 6 S. Ct. 524, 116 U. S. 616, 29 L. Ed. 746; Weeks v. United States, 34 S. Ct. 341. 232 U. S. 383, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Amos v. United States, 41 S. Ct. 390. 255 U. S. 313, 65 L. Ed. 654; Agnello v. United States, 46 S. Ct. 4, 70 L. Ed. 145.
 

 A majority of the state courts of last resort also have adopted the rule prevailing in the federal courts. Cornelius on the Law of Search and Seizure, § 7, p. 45.
 

 Tlio Fourth and Fifth Amendments, of course, are not applicable to prosecutions in the state courts. It is the Fourth Amendment that guarantees that the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and that no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. The Fifth Amendment contains the guaranty that no person shall be compelled in a criminal case to be a witness against himself.
 

 The corresponding or substitute provisions in the Constitution of Louisiana are, respectively, sections 7 and 11 of article 1, which is the Bill of Rights. Section 7 provides:
 

 “The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no such search or seizure shall be made except upon warrant therefor issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.”
 

 Section 11, which is only remotely, if at all, pertinent to the question of admissibility of evidence procured by a search and seizure without a warrant, provides:
 

 “No person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this Constitution. No person under arrest shall be subjected to any,treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made.”
 

 Section 5 of Act 39 of 1921, which, as amended by Act 57 of 1924, is the prohibition law of the state, provides that residences shall be not subject to invasion and search except by an officer authorized by a search warrant issued by a court having the power of a committing magistrate, on the affidavits of two reliable persons that they have reason to believe, and do believe, that the house is being used as a cloak or cover for a violation of the statute, and specifying the' violation being committed therein, together with such additional or corroborating evidence as the magistrate may require to establish a probability that the statute is being violated.
 

 ' For an officer to search a private dwelling without a warrant is of itself unreasonable and abhorrent, aside from being a violation of the Constitution and the statute. For that offense there is no penalty provided in the statute. The Congress of the United States has made it a crime, subject to heavy penalty, for a federal enforcement officer
 
 to
 
 search a private dwelling without a warrant directing the search. Act of November 23, 1021, c. 134, § 6, 42 Stat. at L. 222, Comp. St. Ann. Supp. 1923, § 10184a, Fed. Stat. Anno. Supp. 1921, p. 230.
 

 We adhere to the opinion which we have expressed in former decisions that, however wrong and illegal it may be for an officer of the law to invade and search a private dwelling without a warrant, his offense does not affect the question of admissibility or worth of evidence discovered in that way. The provisions of the Constitution and the statute forbidding a search of a private dwelling
 
 *245
 
 without a warrant do not constitute a rule regarding the admissibility of evidence. An unsuccessful attempt was made in the Constitutional convention of 1921 to make section 7 of article 1 a rule of evidence. As reported by the committee on the Bill of Bights, section 7 contained this provision, which, on motion of one of the delegates (who was a district attorney), and by vote of the convention itself, was stricken out, viz.:
 

 “And no evidence obtained by unlawful search or seizure may be used against any person accused of crime.”
 

 See Journal of the Convention, pp. 423 and 454.
 

 Section 11 of article 1 of the Constitution, like the. Fifth Amendment of the federal Constitution, guaranteeing that no one shall be compelled in a criminal case to be a witness against himself, is,
 
 essentially
 
 and in terms, a rule of evidence. In fact, the provision in the Constitution in that respect is merely an expression of the common-law rule of evidence, nemo tenetur seipsam accusare. But
 
 the rule goes no
 
 further than to exclude the involuntary confession itself. Physical evidences or facts tending to'prove, apart from and independent of the confession itself, that a crime has been committed are admissible in evidence against a person on trial for the •crime, even though the facts were discovered in consequence of a confession obtained from the accused person in violation of his constitutional protection against being compelled
 
 to be
 
 a witness or to give evidence against himself. That rule is universal, and it is not possible to reconcile with it the doctrine that physical evidences or facts tending to prove that a crime has been committed must be excluded as worthless evidence if the facts were •discovered in consequence of a violation qf the other constitutional guaranty — the guaranty against unlawful search and seizure— which is not a rule of evidence.
 

 We agree with the advocates on the other side of this disturbing question that the fundamental and vital principle which an officer of the law violates when he invades and searches a private dwelling without a warrant, or with a bogus warrant, is pa'ramount. We agree that the offending officer in such case ought to be speedily rebuked and punished, if needs be, by impeachment for malfeasance in office. But we do not agree that the only or proper way to rebuke or punish the officer, in such case is to let the victim of his wrongdoing, caught violating another law, enacted pursuant to another amendment of the Constitution, go free.
 

 The best argument we have ever read on the other side of this question is in the very able opinion delivered by Chief Justice Carroll, for the Court of Appeals of Kentucky, in Youman v. Commonwealth, 224 S. W. 860, 189 Ky. 152, viz.:
 

 “Will courts, established to administer justice and enforce the laws of the state receive, over the objection of the accused, evidence offered by the prosecution that was admittedly obtained by a public officer in deliberate disregard of law for the purpose of securing the conviction of an -alleged offender? In other words, will courts authorize and encourage public officers to violate the law, and close their eyes to methods that must inevitably bring the law into disrepute, in order that an accused may be found guilty? Will a high court of the state say in effect to one of its officers that the Constitution of the state prohibits a search of the premises of a person without a search warrant, but if you can obtain evidence against the accused by' so doing you may go to his premises,, break open the doors of his house, and search it in his absence, or over his protest if present, and this court will permit the evidence so secured to go to the jury to secure his conviction?
 

 “It seems to us that a practice like this would do infinitely more harm than good in the administration of justice; that it would surely create in the minds of the people the belief that courts had no respect for the Constitution or laws, when respect interfered with the ends desired to be accomplished. We cannot give our approval to a practice like this. It is much better that a guilty individual should escape punishment than that a court of justice should put aside a vital fundamental principle of the law in • order to secure his conviction. In the
 
 *247
 
 exercise of tlieir great powers, courts have no higher duty to perform than those involving the protection of the citizen in the civil rights guaranteed to him by the Constitution, and if at any time the protection of these rights should delay, or even defeat, the ends of justice in the particular ease, it is better for the public good, that this should happen than that a great constitutional mandate should be nullified. It is trifling with the importance of the question to say, as some courts have said, that the injured party has his cause of action against the officer, and this should be sufficient satisfaction. Perhaps, so far as the rights of the individual are concerned, this might answer; but it does not meet the demands of the law-abiding public, who are more interested in the preservation of fundamental principles than they are in the punishment of some petty offender.”
 

 That argument is founded upon the false premise that the only way — or proper way— to rebuke and punish an overzealous officer for having obtained evidence by an unlawful search and seizure is to refuse to let the state use the evidence against the victim of the unlawful search and seizure. The courts that decline to regard the constitutional guaranty against unlawful search and seizure as a rule of evidence do not thereby authorize or encougage the officers to violate the law, or to resort to methods that might bring the law into disrepute, or to go, without a search warrant, to a private dwelling and break open the doors and search the house in the householder’s absence or over his protest. There is no danger that a logical observance and enforcement of the rules of evidence in that respect will do more harm than good in the administration of justice, or create in the minds of the people a belief that the courts have no respect for the Constitution or laws, when respect interferes with the ends to be accomplished. What the courts really do, in the way of administering abstract justice, when they apply the rule of evidence logically, in that respect, is to decline to empower the sheriffs, constables, and police officers) to grant immunity to any law violator by searching his premises and seizing his lawbreaking outfit without a valid warrant.
 

 The rules of evidence in the trial of petty offenders are the same as for the trial of other criminals. In our leniency towards petty offenders, we must not, in fact, we cannot, establish a rule of evidence for them that will not avail other criminals as well.
 

 If an officer unlawfully invades and searches a private dwelling, he ought to be rebuked and punished for the offense, and perhaps be removed for malfeasance, without regard for his having discovered or having failed to discover that some other crime or offense was committed. If an officer of the law seizes property which the owner possesses innocently, and which the officer has no right to confiscate or take possession of, the property ought, to be returned to its owner, whether it was seized with or without a warrant. But, when the owner’s right to a return of property unlawfully seized depends upon his guilt or innocence of a crime charged against him, and the property is needed as evidence of the commission of the crime charged, the question of guilt or innocence must be determined first in order to determine whether the,property ought to be returned.
 

 The wrong committed by the officers in this case was done when they, without a valid search warrant, entered and searched the defendant’s dwelling and seized and carried off his whisky. The subsequent offering of the whisky in evidence was not a part or continuation of the wrong that was committed by the unlawful search and seizure. The offering of the whisky in evidénee, to prove that the defendant had violated the prohibition law, would have been just as damaging and humiliating to the defendant if the sheriff had had a valid search warrant when he found and seized the whisky. It would have been consoling and gratifying to the defendant, of course, if the judge had laid the flattering unction to the defendant’s soul, by re
 
 *249
 
 turning his whisky, with an apology; and without allowing the state,to prove that the whisky was found in the defendant’s possession. Perhaps that would have atoned for the sheriff’s wrongdoing as far as the defendant was concerned, but how about the law-.abiding public? They are, at least they ought to be, the complainants in both accusations— the accusation that the officers of the law violated one, and the accusation that this defendant violated another, amendment of the Constitution. What punishment- would it have been to the officers of the law if the judge had refused to allow the state to introduce the proof of. the defendant’s guilt?
 

 The only difference of opinion on this question, of admissibility of evidence obtained by .an unlawful search and seizure, is as to whether rejecting the evidence is the proper way to rebuke the officer for making the unlawful search and seizure, and thereby to discourage others. We all agree upon the sa•credness of the right of the people to be secure against unlawful search and seizure, and upon the gravity of the wrong of an officer who invades that sacred right. We do not1 encourage or condone the wrong, or lessen the gravity of the offense, when we maintain that the better way to discourage it is, not by denying the state the right to use evidence obtained in that way, in a prosecution of some one else for some other offense, but by proceeding directly against the officer for his offense.
 

 By way of apology for the length of this -opinion, let it be said that the argument of the learned counsel for the appellant was presented so earnestly and so forcibly, and was supported by such high authority, as .to persuade us to consider and discuss the 'question as if it were a new one with us, notwithstanding we had considered and decided it in the six cases which we have cited. We are not convinced that the ruling in those cases was wrong.
 

 The conviction and sentence are affirmed.
 

 ST. PAUL, ROGERS, and BRUNOT, JJ., dissent.