FOURNET, Chief Justice.
 

 The accused, Junius Lee Robinson, alias “Stale Bread,” having been charged by information with the unlawful possession of narcotics, in contravention of Act 14 of the Second Extra Session of 1934, as amended by Act 416 of 1948, LSA-R.S. 40: 961 et seq., is appealing from his conviction and sentence thereunder to serve five years at hard labor in the state penitentiary. He relies for a reversal on a number of errors allegedly made by the trial judge in his rulings, to which timely objection was made and proper bills of exceptions reserved and perfected.
 

 Altogether seventeen bills of exceptions were reserved, and counsel takes issue with the failure of the trial judge to incorporate in his general charge to the jury the accused’s special charges Nos. 2, 3, 4, 5, 6, and
 
 7.
 
 However, Bills of Exceptions Nos. 5 and 12 have been abandoned, and a number of the other bills have been consolidated with those touching on the same issue, as have also several of the special charges. As thus grouped, they involve nine points of law for our consideration.
 

 The facts of the case are interwoven with a number of the points of law raised, and
 
 *26
 
 an understanding of them is important to a decision of the issues involved. As reflected by the per curiams of the trial judge and the notes of evidence in the record, a number of arresting officers, including John Faulkner, then a federal narcotic agent, went to a house owned by Madeline Mike, on Metropolitan Street in.New Orleans, Louisiana, where the accused lived with his common-law wife, Violetta Foster,' in a room rented by him. Several of the officers entered through the kitchen, requesting Violetta Foster, who they found there, to remain. In the meanwhile, others, entering through the front door, opened to their knock by a colored woman known as Rose Thompson, asked Madeline Mike, then in her own bedroom, to show them Robinson’s room. Upon entering this room they found the accused lying or reclining on his bed, as was also another negro male, Detroit Larks. A third negro male, Leon Johnson, was also in the room, but not on the bed. On the bed between the accused and Larks were 209 rolled marijuana cigarettes, while at the foot of the bed were three pounds of loose marijuana in two paper bags, as yet unrolled into cigarettes. On a dresser were fifty capsules of heroin, in a rubber finger. (Johnson had six marijuana cigarettes in his front pocket and when charged with their possession under the federal law, he pleaded guilty and is now serving sentence.) The accused stated, when questioned by the arresting officers, and although there were two other men in the room, that the narcotics discovered there belonged to him.
 

 This evidence was taken in charge by Faulkner and turned over to the federal narcotics bureau, where it was analyzed by the chemist. The accused was then charged in the federal and state courts with violation of the respective narcotic laws. When the federal court, upon the motion of Robinson, suppressed the evidence seized at the time of his arrest, the prosecution against him in the federal court was nolle prossed upon the motion of the federal attorney. The state officials then prosecuted Robinson on the charge against him in the state court, and he was convicted.
 

 At the inception of the trial, counsel for the accused demurred to the indictment on the ground that his client (who was charged on March 8, 1950, and arraigned on March 27, 1950) was granted a legislative pardon when the act under which he was charged, Act 14 of the Second Extra Session of 1934, as amended by Act 416 of 1948, was specifically repealed upon the adoption of the Louisiana Revised Statutes of 1950 (which went into effect on May 1, 1950) without the inclusion in this revision of a proper savings clause. When this demurrer was overruled, Bill of Exceptions No. 1 was reserved.
 

 Answering this point, counsel for the state cite State v. Mathe, 219 La. 661, 53 So.2d 802. This case is Controlling. In addition, it should be pointed out that coun
 
 *28
 
 sel obviously overlooked the following provision of LSA-R.S. 24:171 (which was not called to our attention when we decided the Mathe case): “The repeal of any law shall not have the effect of releasing or extinguishing any penalty, forfeiture or liability, civil or criminal, incurred under such law unless the repealing act expressly so provides, and such law shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.”
 

 There is no language in LSA-R.S. 40:961, the “Uniform Narcotic Drug Law,” nor has counsel pointed to any other provision which would have the effect of releasing or extinguishing any criminal penalty incurred under Act 14 of the Second Extra Session of 1934, as amended, and we are directed in LSA-R.S. 24:171 to treat the previous law “as still remaining in force for the purpose of sustaining” this prosecution.
 

 Counsel next sought to have the indictment quashed on the ground that the state was without authority to prosecute Robinson under Act 14 of the Second Extra Session of 1934, and particularly Section 21, inasmuch as he had already been discharged therefrom'in the federal court. Bill of Exceptions Nos. 2 and 17, as well as special charge No. 7, have reference to this contention. •
 

 While Section 21 of this act does provide that “No person shall be prosecuted for a violation of any provision of this act if such person has been
 
 acquitted
 
 or
 
 convicted
 
 under the Federal Narcotic Laws of the same act or omission which, it is alleged, constitutes a violation of this act”, the record snows that the case against the accused, growing out of this same evidence and charge, was
 
 nolle prossed
 
 in the federal court. It is obvious, therefore, that Robinson was neither acquitted nor convicted, or even put in jeopardy, of the same charge in the federal court. In fact, the federal attorney could, at any time within the permissible prescriptive period, have him re-indicted for this offense. There is, therefore, no merit to this contention. (Emphasis added.)
 

 The third alleged error relied on here by counsel grew out of the refusal of the trial judge to suppress the evidence seized without a search warrant at the time the accused was arrested. Counsel argues that the rule obtaining in this state that evidence so secured is admissible during the trial. City of Shreveport v. Knowles, 136 La. 770, 67 So. 824; City of Shreveport v. Marx, 148 La. 31, 86 So. 602; State v. Zeblit, 152 La. 594, 93 So. 912; State v. Tuggle, 152 La. 747, 94 So. 377; State v. Creel, 152 La. 888, 94 So. 433; State v. Mims, 153 La. 9, 95 So. 264; State v. Lowry, 153 La. 177, 95 So. 596; State v. Davis, 154 La. 405, 97 So. 590; State v. Weaver, 157 La. 95, 102 So. 81; State v. Eddins, 161 La. 240, 108 So. 468; State v. Alvarez, 182 La. 908, 162 So. 725; State v. Shotts, 207 La. 898, 22 So.2d 209, which is in accord
 
 *30
 
 with the majority rule in this country, 22 C.J.S., Criminal Law, § 657, page 1005. People v. One 1941 Mercury Sedan, 74 Cal.App.2d 199, 168 P.2d 443, is not only unconstitutional under the guarantees against illegal searches and seizures, but has also been abrogated, in so far as narcotics are concerned, by Section 11-A of the Second Extra Session of 1934. (The adverse rulings of the trial judge admitting this evidence, and permitting testimony with respect thereto, are incorporated in Bills of Exceptions Nos. 3 and 6, and in special charges Nos. 3 and 4.)
 

 The constitutional aspect of this Issue has already been decided adversely to the contention of counsel. See State v. Creel, supra, for a splendid dissertation on this matter from an 'historical standpoint.
 

 There is nothing in the language of Section 11-A, or of any other section of this act, for that matter, from which the conclusion can be reached that the legislature, in setting up the procedure whereby a legal search warrant to aid in discovering illegally kept narcotics anight be obtained, intended to change the settled jurisprudence of this court with respect to the admissibility of such evidence. Clearly, therefore, the trial judge’s ruling admitting this evidence, as well as the testimony with respect- thereto, was correct.
 

 Counsel next contends that inasmuch as the defendant did not take the stand in his own behalf, the trial judge committed reversible error in permitting the prosecution, over his objection, to state in the opening statement to the jury the state intended to prove an examination made of the arms of Robinson at the time of his arrest showed evidence of prick marks, the theory being that such a statement, as. well as the testimony of the officers in.substantiation, was a violation of Section 11 of Article I of the Constitution of 1921, in that it compelled him to give incriminating bodily evidence against himself. (Bills of Exceptions Nos. 4 and 9 cover these rulings.)
 

 The note of evidence attached to these bills shows that after the officers had placed the accused under arrest in his bedroom, he rolled up his sleeve without protest upon instruction of the witness Faulkner, and an examination disclosed “numérous marks, which resemble hypodermic injections into the veins,” on the inner side of his arm in the vicinity of the elbow, the witness stating these marks were common to narcotic addicts, and that the accused admitted at -the time that he had been an addict for some nine months.
 

 Although there are authorities to the contrary, mostly in those states that consider evidence secured without a.search warrant inadmissible, the prevailing rule throughout this country is to the effect that this constitutional guarantee has reference to testimonial compulsion, whether oral or written, only bodily exhibitions and muscular exertions not being within
 
 *32
 
 its protecting scope. State v. Prudhomme, 25 La.Ann. 522; State v. Aspara, 113 La. 940, 37 So. 883; State v. Graham, 116 La. 779, 41 So. 90; State v. McLaughlin, 138 La. 958, 70 So. 925; State v. Butler, 157 La. 1087, 103 So. 332; State v. Griffin, 129 S.C. 200, 124 S.E. 81, 35 A.L.R. 1227; People v. Gardner, 144 N.Y. 119, 38 N.E. 1003, 28 L.R.A. 699, 43 Am.St.Rep. 741, 9 Cr.R. 404; People v. Van Wormer, 175 N.Y. 188, 67 N.E. 299, 17 Cr.R. 359; State v. Cram, 176 Or. 577, 160 P.2d 283, 164 A.L.R. 967; 171 A.L.R. 1144; 175 A.L.R. 240; 8 Wigmore on Evidence (Third Edition) 374, Sections 2250, etc., and particularly Sections 2263 and 2265; 3 Wigmore on Criminal Evidence (Eleventh Edition) 1979, Section 1141; Rule 205 of the Model Code of Evidence, drafted by the American Law Institute; and 17 Minnesota Law Review 187. For an excellent discussion of this subject, see State v. Roy, 220 La. 1017, 58 So.2d 323, and People v. One 1941 Mercury Sedan, 74 Cal.App.2d 199, 168 P.2d 443.
 

 Bill of Exceptions No. 7 was reserved when the trial judge refused to permit counsel to attack the credibility of the state’s witness Faulkner 'by asking him whether he was not under investigation as a narcotic agent and for “taking graft and selling narcotics and touting cases for lawyers,” when he resigned or was fired from the federal department in which he was employed at the time he participated in the arrest of the accused, and, having ascertained that he was then employed by the sheriff of Jefferson Parish, to question him also with respect to his then being stationed in one of the gambling houses in Jefferson Parish. Counsel further complains that the remark of the trial judge, made after this second question was asked, to the effect that the court was there to protect witnesses and would not permit counsel to “ask the witness insulting questions,” for which the witness thanked him, constituted a comment on the credibility of the witness in the presence of the jury.
 

 In disposing of the issues raised in this bill,- the trial judge treated the questions separately, stating he refused to permit the question with respect to conditions prevailing at the time the witness left the federal employ for the reason that Article 495 of the Code of Criminal Procedure, LSA-R.S. 15:495, permits “Evidence of
 
 conviction
 
 of crime, but not of arrest, indictment or prosecution,” for the purposes of impeachment; consequently, that while counsel could have asked the witness if he had been convicted of these charges, he could not question him with respect to being under investigation. (Emphasis added.)
 

 He advises further that he refused to permit the questioning with respect to this witness’ employment in a gambling house in Jefferson Parish as being outside the permissible questioning for impeachment purposes laid down in Articles 490, 491, and 492 of the Code of Criminal Procedure, LSA-R.S. 15 :490 to 15:492, (which are to
 
 *34
 
 the effect that a witness may be attacked generally only by showing general reputation for truth and good character, and particularly only in so far as the case itself is concerned 'by showing interest, bias, corruption, and not by showing particular acts of his), for the reason that the “question was broad and general, and there was nothing in the question to indicate that it had any connection with or relation to any fact or incident connected with the appellant or with the case on trial; that the question, in its broad and general form, had no relationship to the credibility of the witness 'in the case on trial.’ ”
 

 He denied specifically that he made any comment whatsoever with respect to the credibility of this- witness in the presence of the jury, and only stopped the questioning with respect to work in a gambling house for the reason that the witness was testifying for the state under compulsion and, therefore, entitled to the protection of the court, particularly when the questions were insulting and insinuating.
 

 We see no error in these rulings of the trial judge, and we fail to appreciate in what way his remarks could be considered a comment on the credibility of this witness.
 

 Bill of Exceptions No-. 8 was reserved to the ruling of the trial judge admitting the alleged oral confession of the accused that the narcotics found in his room belonged to him. It is counsel’s contention that this confession was inadmissible on two grounds: (1) Proper predicate had not been laid since it was not shown the confession was freely and voluntarily given without resort to force or promise of reward, and (2) that it was premature, since there was no evidence before the court of the corpus delicti (the narcotics) at the time of its introduction.
 

 The second point has apparently been abandoned, since counsel has not argued it here, either orally or in brief. In any event, it is without merit, for the trial judge advises there was at the time ample evidence of the corpus delicti before the court.
 

 We think the first point is also without merit. From a careful study and analysis of the testimony of the several arresting officers who laid the predicate for the admission (Louis Fernandez, Jay Sedgebeer, and John Faulkner), as well as the testimony of the only witnesses offered by the accused, who did not take the stand himself, to traverse the testimony of the state’s witnesses (Madeline Mike, Violetta Foster, and Detroit Larks), we conclude, as did the trial judge, that logic and probability so strongly favored the testimony of the officers and discredited that of the other witnesses, that reason compelled his acceptance of the former and the rejection of the latter. Furthermore, that the testimony of these arresting officers was not overcome by that of the witnesses for the accused.
 

 
 *36
 
 Counsel is here contending, however, in strong reliance on the case of State v. Honeycutt, 216 La. 610, 44 So.2d 313, that the confession was illegally admitted since the state did not rebut his traverse of the testimony of the officers who laid the predicate for the admission of this oral confession.
 

 The Honeycutt case is not controlling from a factual standpoint. In that case several state witnesses testified that at the time the accused made his confession in the sheriff’s office, no promises were made and no force used. Taking the stand in his own behalf, the accused stated that while it was true no force or duress was employed the morning he made the formal confession, he had been beaten in his cell the night before and told that if he did not confess the next morning he would be whipped again. In other words, the state merely proved no beating was administered at the time the confession was reduced to writing in the sheriff’s office, while the accused stated he was beaten the night before and the confession elicited in this manner. His testimony with respect to the beating in the jail was not rebutted by any of the officers present at the time, other than the deputy sheriff, even though they were present in court and had already testified with respect to the conditions prevailing at the time of the formal confession, and the testimony of the deputy sheriff in charge of the prisoner, to the effect that the accused had not been beaten in his cell, was uncorroborated. We therefore concluded the state had failed to carry the burden of proving the confession was freely and voluntarily given.
 

 In the instant case this oral confession was made within minutes after the arresting officers entered the bedroom of the accused, where they found him surrounded, as it were, by this large amount of narcotics. At that time only one of the witnesses who sought to traverse the testimony of these officers — Detroit Larks — -was present, the two women being in other parts of the house. The accused did not take the stand to testify that he had been beaten by the arresting officers at a time different than that testified to, nor, for that fact, did any of his witnesses so testify. Furthermore, the state’s three witnesses were subject to a vigorous and extended cross-examination by counsel for the accused, during which every phase of the incidents that transpired at the time of this arrest was fully explored.
 

 We therefore conclude, as did the trial judge, that the state has carried the burden of proving this confession was freely and voluntarily made, without use of force or promise of reward.
 

 In the next bill relied on (Bill of Exceptions No. 10) the contention is made that the trial judge erroneously permitted the prosecution, during the closing argument to the jury, to refer to the accused as “this dope peddler.” (Bill of Exceptions No. 12,
 
 *38
 
 which has been abandoned, was reserved when the prosecution, during this same argument, stated: “We have a big leaguer here; we have no busy leaguer here.”),
 

 We agree with the trial judge that this characterization was warranted by the evidence, and therefore, admissible under Article 381 of the Code of Criminal Procedure, LSA-R.S. 15:381, which permits counsel to argue both the law and the evidence to the jury, so long as these are confined “to matters as to which evidence has been received, or of which judicial cognizance is taken, and to the law applicable to the evidence”.
 

 It is the settled jurisprudence of this court, under the rules laid down in Articles 381 and 382 of the Code of Criminal Procedure, LSA-R.S. 15:381, 15:382, that while counsel in arguing the case to the jury on both the law and the evidence must refrain from any appeal to prejudice, he may, nevertheless, draw such conclusions or inferences as the evidence may warrant; further, that denunciation based upon the evidence is not objectionable. State v. Jackson, 142 La. 636, 77 So. 484; State v. Holbrook, 153 La. 1025, 1026, 97 So. 27; State v. Dunn, 161 La. 532, 109 So. 56; State v. Vastine, 172 La. 137, 133 So. 389.
 

 The next Bill of Exceptions (No. 11) was -reserved when the trial judge refused to permit counsel to read to the jury, during his closing argument on behalf, of the accused, an excerpt from Wharton’s work on Criminal Evidence touching on the credibility of police officers, and which is to the effect that personal observation had led the writer to believe these officers have little regard for an oath, since they testify so frequently in court.
 

 In his per curiam the trial judge tells us he disallowed this for several reasons. First, it did not represent the law on the subject, only the author’s personal and individual opinion as to the credibility of police officers generally and as a class. Second, that even if this were Wharton’s opinion, he could not testify in this vein even if he were in court personally, since the credibility of a witness may be impeached only in those ways set out in Articles 490, 491, and 492 of the Code of Criminal Procedure, discussed above in connection with Bill of Exceptions No. 7. Last, that the accused could have suffered no prejudice by reason of his ruling since counsel then proceeded to give the jury the benefit of Wharton’s conclusions in his own words.
 

 Under these circumstances, we see no error in this ruling.
 

 This brings up for our consideration the last argument advanced by counsel in this court, .i. e., that the trial judge erred in refusing to incorporate in his general charge to the jury the accused’s special charges Nos. 2, 3, 4, 5, 6, and 7. (The rulings complained of are incorporated in and made a part of Bills of Exceptions Nos. 13 and 14, but special charge No. 7 is not
 
 *40
 
 argued here for the reason that it was incorporated with Bill of Exceptions No. 2— having reference to the effect of the nolle prosequi in the federal court, above discussed.)
 

 We agree with the trial judge that he correctly denied special charge No. 2, it being nothing more than a repetition of special charge No. 1, which was granted.
 

 For the reasons hereinabove assigned in discussing Bills of Exceptions Nos. 3 and 6 (with respect to the admissibility of evidence seized without a search warrant), special charges Nos. 3 and 4 were properly denied.
 

 After reading the trial judge’s general charge, we agree that the subject matter covered in special charge No. 5 was covered in the general charge, and it therefore amounted to nothing more than a repetition.
 

 We are in accord with the trial judge’s ruling that the accused was not entitled to have the jury specially charged as requested in No. 6, i. e., that the responsive verdicts to the crime with which he was charged (wilfully and unlawfully possessing narcotics) include “guilty of being an addict,” in addition to “guilty as charged,” “guilty of the attempted possession of a narcotic drug,” and “not guilty.”
 

 It is only when the indictment sets out an offense including other offenses of less magnitude or grade that the judge may “charge the jury the law applicable to all offenses of which the accused could be found guilty under the indictment.” Article 386 of the Code of Criminal Procedure, LSA-R.S. 15:386. Furthermore, “The verdict must be responsive to the indictment, that is to say,
 
 no one can be found guilty of an offense not charged in the indictment or not necessarily included in the offense charged”.
 
 Article 405, LSA-R.S. 15 :405. “When the crime charged includes another of lesser grade, a verdict of guilty of the lesser crime is responsive to the indictment”. Article 406, LSA-R.S. 15:406. On the same subject is Article 5 of the Criminal Code, LSA-R.S. 14:5, in which it is provided that “An offender who commits an offense which includes all the elements of other lesser offenses, may be prosecuted for and convicted of either the greater offense or one of the lesser and included offenses.” (Emphasis added.)
 

 In discussing these articles in State v. Roberts, 213 La. 559, 35 So.2d 216, 218, we said: “Comparison of the provisions of Articles 386, 405 and 406 of the Code of Criminal Procedure and Article 5 of the Criminal Code * * * with the prior jurisprudence discloses that the former are in reality a codification of the well-settled pronouncements of this court relative to greater and lesser offenses and responsive verdicts.
 
 Under the lam and the jurisprudence, it is vital to the validity of 'any verdict for a lesser offense that all the elements of that offense are necessarily
 
 
 *42
 

 contained in the definition of the greater offense.”
 
 See, also, State v. Antoine, 189 La. 619, 180 So. 465, and State v. Poe, 214 La. 606, 38 So.2d 359, on -rehearing, and the authorities therein cited. (Emphasis added.)
 

 ' The indictment in the instant case simply charges that the accused did, at the time and place specified “wilfully and unlawfully possess and have under his control” the narcotics seized, contrary to the form of the state.
 

 Clearly the offense of possessing narcotics, as defined in the act under which the defendant was charged, Act 14 of the Second Extra Session of 1934, as amended, neither included in, nor does it in fact Lave, any of the elements of the crime of being an addict. Consequently the requested charge — guilty of being an addict— was not a responsive verdict.
 

 For the reasons assigned, the conviction .and sentence are affirmed.