149 So.2d 417

**STATE of Louisiana**

**v.**

**Frank Joseph CALASCIONE.**

No. 46266.

Jan. 14, 1963.

Rehearing Denied Feb. 18, 1963:

Sam Monk Zelden, Max Zelden, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

FOURNET, Chief Justice.

· The accused, Frank Joseph Calascione, having been charged with the unlawful possession of fifteen marijuana cigarettes in violation of R.S. 40:962,[1] appeals from his conviction and sentence thereunder to serve ten years at hard labor.

For a reversal of his sentence and conviction, the defendant relies upon three bills of exception,[2] all involving the same issue, i. e., whether the cigarettes upon which the state based its case were admissible in evidence, it being the defendant's contention that they had been obtained illegally in that they were secured without a search warrant as required by R.S. 40:972,[3] and in violation of his constitutional rights to be secure in his person and effects from unreasonable searches and seizures, guaranteed by the Fourth Amendment to the Constitution of the United States [4] and by Article I, Section 7 of the Constitution of Louisiana.[5]

Under the holdings of the federal courts since the Supreme Court's decision in Weeks

---

1. R.S. 40:962, the pertinent portion thereof:
   "A. It is unlawful for any person to manufacture, possess, have under his control, sell, give, deliver, transport, prescribe, administer, dispense, or compound any narcotic drug, except as provided in this Sub-part, * * *."

2. The bills were reserved when: (1) the trial judge denied the defendant's motion to suppress the introduction in evidence of the fifteen cigarettes, (2) he permitted the introduction of the cigarettes in evidence over the defendant's objection, and (3) he refused to grant a new trial based on the two above bills.

3. R.S. 40:972 "Searches and seizures; forfeiture of illegally possessed narcotics," provides in part:
   " * * * no house, room or apartment used as, or which apparently is, a bona fide residence, shall be subject to invasion and search, except by an officer designated in a search warrant issued by a competent court having the powers of a committing magistrate, upon the filing in said court of an affidavit by two reliable persons reciting that they have reasons to believe and do believe that said place of residence is being used as a cloak or cover for a·violation of the provisions of this Sub-part, and setting forth the specific violation being committed therein, together with such additional corroborating evidence as the court may, in its discretion, require to establish the probable existence of the alleged violation of this Sub-part. Such warrant shall be directed to a duly authorized peace officer and the premises described in the warrant shall be searched and all narcotic drugs * * * shall be seized by such officer and the keeper of such place, or the person to whom such narcotic drug * * * belongs, shall be apprehended and brought before the court issuing the warrant, to abide the further orders of the court. * * *"

4. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

5. "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no such search or seizure shall be made except upon warrant therefor issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched·and the persons or things to be seized."

v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, the right of a man to be free from invasions of his home and privacy by arbitrary police intrusion has been well established and evidence seized in the absence of a search warrant has been recognized as being inadmissible and suppressed by motion timely filed by the accused. This practice has also obtained in the tribunals of many sister states; but up to the present time, the jurisprudence of this state is replete with decisions holding that relevant evidence, although secured illegally, is nonetheless admissible in evidence in the trial of a criminal case. City of Shreveport v. Marx, 148 La. 31, 86 So. 602; State v. Tuggle, 152 La. 747, 94 So. 377; State v. Creel, 152 La. 888, 94 So. 433; State v. Eddins, 161 La. 240, 108 So. 468; State v. Alvarez, 182 La. 908, 162 So. 725; State v. Shotts, 207 La. 898, 22 So.2d 209; State v. Robinson, 221 La. 19, 58 So.2d 408.

The right of a state to permit the introduction of such evidence was recognized by the United States Supreme Court in Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 and it continued to do so until its recent decision in the case of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, where it ruled otherwise and held that all evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in a criminal trial in a state court, reasoning: "The ignoble shortcut to conviction left open to the State tends to destroy the entire system of constitutional restraints on which the liberties of the people rest. Having once recognized that the right to privacy embodied in the Fourth Amendment is enforceable against the States, and that the right to be secure against rude invasions of privacy by state officers is, therefore, constitutional in origin, we can no longer permit that right to remain an empty promise. Because it is enforceable in the same manner and to like effect as other basic rights secured by the Due Process Clause, we can no longer permit it to be revocable at the whim of any police officer who, in the name of law enforcement itself, chooses to suspend its enjoyment. Our decision, founded on reason and truth, gives to the individual no more than that which the Constitution guarantees him, to the police officer no less than that to which honest law enforcement is entitled, and, to the courts, that judicial integrity so necessary in the true administration of justice."

The question posed for our determination is whether under the facts of this case the officers were authorized under the law to arrest the defendant and to search the premises of his home. The fact that the fifteen marijuana cigarettes were secured without the benefit of a search warrant does not necessarily constitute them as being illegally obtained and therefore inadmissible in evidence as it is an *unreasonable* search and seizure of property that is prohibited by the Fourth Amendment to the

United States Constitution and Article 1, Section 7 of this state's Constitution.

■ Under the express provisions of the Code of Criminal Procedure, "Any peace officer may, *without a warrant*, arrest a person * * * (4) [w]hen he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it," [6] and " * * * the officer making the arrest shall inform the person arrested of his authority and the cause of the arrest * * *" [7] and " * * * take from the person arrested, all offensive weapons or incriminating articles which he may have about his person * * *" [8] (Emphasis supplied) "The right 'to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed' seems to have stemmed not only from the acknowledged authority to search the person, but also from the long-standing practice of searching for other proofs of guilt within the control of the accused found upon arrest. Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652. It became accepted that the premises where the arrest was made, which premises were under the control of the person arrested and where the crime was being committed, were subject to search without a search warrant. Such a search

6. R.S. 15:60.
7. R.S. 15:70.
8. R.S. 15:68.

was not 'unreasonable.' Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5 [70 L.Ed. 145]; Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 287 [69 L.Ed. 543]; Boyd v. United States, 116 U.S. 616, 623–624, 6 S.Ct. 524, 528, 29 L.Ed. 746." [9]

■ The defendant, in support of his motion to suppress, adduced his own testimony and his wife's, in addition to that of the arresting officers, Favalora, Loisel and Lindsey, all members of the Narcotics Squad of the New Orleans Police Department. In substance, the officers testified that in the course of their duties they had secured a "tip" that narcotics were being distributed from 722 North White Street, the residence of the defendant. In consequence thereof, they placed a "stake-out" or surveillance of the house from 1:30 p. m. until the defendant's arrest at 6:00 p. m. on March 9, 1961, concealing themselves in a panel body truck about sixty feet from the defendant's residence. Two other officers were in an unmarked police automobile parked about one block away; both vehicles were equipped with a two-way communication system.

At approximately 5:00 p. m., the officers in the truck observed Clyde Romagossa, whom they had previously "handled" in connection with narcotics, approach the residence and speak with the defendant's

9. United States v. Rabinowitz, 339 U.S. 56, 61, 70 S.Ct. 430, 433, 94 L.Ed. 653.

wife who told him her husband was not at home, but that he would be there shortly. The defendant arrived about 5:30 p. m. and almost immediately thereafter Romagossa reappeared, his knock on the door was answered by the defendant; the ensuing conversation was not over-heard by the policemen, but they observed Romagossa extract currency from his pocket and hand it to the defendant, who went into another part of the house, returned shortly thereafter, and apparently handed something to Romagossa, who then left. Whereupon, Favalora contacted the officers in the automobile and instructed them to detain Romagossa; within a few minutes they informed Favalora of their arrest of Romagossa and his companions who had in their possession two marijuana cigarettes and a revolver.

Officers Loisel and Lindsey then took positions on sach side of the defendant's front door and Favalora was admitted by the defendant into his home, following his

inquiry if he could come in.[10] The defendant was then informed that he was under arrest for investigation of the transaction that took place between him and Romagossa. When apprised of the fact that Romagossa had been apprehended with the two cigarettes, and his admission of their sale, he was told they would have to search his home; at that time he stated that his wife knew nothing about his trafficking in narcotics and volunteered to deliver the fifteen cigarettes which were contained in a tobacco can in the adjoining room, if his wife would not be arrested.

A review of the facts of this case convinces us that the arresting officers had good reason to believe that the defendant had committed a felony, which justified their prompt legal arrest of him, and their right to search his premises in consequence thereof.

For the reasons assigned, the conviction and sentence are affirmed.

10. There is dispute as to what happened after Favalora knocked on the door. The accused testified that Favalora forcibly entered the house, that a struggle ensued during which Favalora informed him that he was a policeman, and it was only then that he desisted. In substance, this testimony was corroborated by that of his wife.

Favalora, however, related that "Frank opened the door wide, and I walked in and identified myself as a police officer and placed him under arrest."