174 So.2d 515

**STATE of Louisiana**

**v.**

**Daniel Edward McILVAINE
and Jackie Krohn.**

**No. 46772.**

March 29, 1965.

Rehearing Denied May 3, 1965.

Maurice R. Woulfe, New Orleans, for defendants and appellants.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

SUMMERS, Justice.

On January 20, 1964, we affirmed the convictions and sentences of Daniel Edward McIlvaine and Jackie Krohn for possession and attempted possession of morphine, respectively. State v. McIlvaine, 245 La. 649, 160 So.2d 566 (1964).

The question which is pertinent here and which was presented for our decision originally concerns the constitutional valid-

ity of a search warrant upon which the State relied to justify a search and seizure of narcotics in the home of the accused, or, alternatively, whether the search and seizure were justified as an incident to a lawful arrest without a warrant.

Our decision was based upon the finding that the search warrant was validly issued upon probable cause, as the sworn request for the warrant stated that the officer applying for it had received information, from a confidential and reliable source, that there were narcotics concealed in the place named in the application. On this finding we concluded that the seized narcotics were admissible in evidence.

When a rehearing was denied by this court the accused applied to the United States Supreme Court for a writ of certiorari. While their petition for certiorari was pending that Court decided Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), wherein it declared that although an affidavit which is the basis for the issuance of a search warrant may be based on hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was "credible" or his information "reliable".

Apparently, because the information contained in the affidavit which was the basis for the issuance of the search warrant was. so strikingly similar to the affidavit in the Aguilar case, the United States Supreme Court, 379 U.S. 10, 85 S.Ct. 90, 13 L.Ed.2d 23, vacated our judgment and remanded the case to this court "for further consideration in light of Aguilar v. Texas."

The State concedes that the affidavit supporting the application for the search warrant in the Aguilar case is almost identical with the affidavit in the instant case, and, unless it can be established that more evidence was presented to the magistrate who issued the search warrant than is contained in the affidavit, the Aguilar case controls: the question of the validity of the search warrant and our decision must be reversed. to conform with that authority.

However, the State now urges as its primary contention what was formerly its alternative contention. That contention is, to the effect that the seizure of the narcotics was justified as an incident to a lawful arrest without warrant. To support the validity of the arrest it is asserted that the arresting officers had reasonable or probable cause to believe that the accused were possessing narcotics and a felony was therefore being committed. This reasonable cause, the State contends, was based upon information contained in the affidavit and other evidence contained in the record.

Throughout this prosecution the State points out that it has urged the validity of

McIlvaine's and Krohn's arrests, based on reasonable cause, under Article 60(4) of the Code of Criminal Procedure, LSA–R.S. 15:60(4). Evidence was taken on this issue; defense counsel had the opportunity to cross-examine the arresting officers and did so; the district judge specifically found that probable cause for the arrests existed; and the State argued the legality of these arrests when this case was originally heard on appeal by this court.

The State's contention that the search and seizure were constitutional as incident to a valid arrest is not, therefore, a new theory which is being injected at this time.

This case is unlike Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) wherein an agent of the narcotics bureau obtained a warrant for the arrest of Giordenello from a United States Commissioner, arrested the accused and seized a bag containing heroin which Giordenello was carrying. The accused urged at his trial that the seizure of the heroin was unlawful, since the warrant of arrest was illegal and the seizure of the narcotics could be justified only as an incident to a legal arrest. The Court held the arrest warrant to be invalid. In its opinion

the Court observed that the Government had defended the legality of Giordenello's arrest by relying *entirely* on the validity of the warrant, and that in the Supreme Court *for the first time* the Government's contention had been that the arrest was justified apart from the warrant, as it was based upon probable cause under Texas law. The Court then declared that these *belated contentions* were not open to the Government *at that stage of the proceedings* and refused to pass on their soundness.

The case before us differs in that the State has steadfastly adhered to the theory, albeit alternatively, that the seizure of the narcotics was an incident to a lawful arrest, based on reasonable cause under Article 60 (4) of the Code of Criminal Procedure. This theory was not heretofore adjudicated by this court for, in our opinion, it was not necessary to do so, inasmuch as we felt that the seizure of the narcotics was proper under what we considered to be a valid search warrant.[1]

It is evident, too, that in its decree of remand the United States Supreme Court did not and could not have passed on the validity of the arrests because the question was not raised in the writ application, the

---

1. "We shall not discuss * * * the State's argument that the arrest, although made without a warrant, was valid under the provisions of Article 60 (4) of the Code of Criminal Procedure because the officers had reasonable cause to believe that a felony had been committed and to believe that these persons

had committed it. Discussion of these contentions is unnecessary because we have concluded that these narcotics were seized under and by virtue of a valid search warrant." State v. McIlvaine, 245 La. 649, 661, 160 So.2d 566, 570 (1964).

Aguilar decision to which that Court referred us in no way involves the question of arrest without warrant, and no reference to any authority on that question was made in the remand to indicate that the State's contention in that respect was without merit.

The State, therefore, being doubtful since the Aguilar case that the search warrant is valid as the record now stands, should not be denied an adjudication of its alternative contention that the search and seizure were justified as an incident to a lawful arrest based upon reasonable cause. We will, therefore, proceed to the adjudication of that contention. See State v. Green, 244 La. 80, 150 So.2d 571 (1963); State v. Aias, 243 La. 945, 149 So.2d 400 (1963); State v. Calascione, 243 La. 993, 149 So.2d 417 (1963); State of Louisiana ex rel. Naylor v. Walker, 206 F.Supp. 544 (D.C.La.1962).

For convenience we will reiterate the facts and circumstances surrounding the arrests as we narrated them in our original opinion (245 La. 649, 160 So.2d 566).

"About 11:00 o'clock on the morning of March 19, 1962, officers of the New Orleans police department, armed with search warrants for 3117 North Derbigny Street and for a certain Chevrolet automobile and a certain Ford automobile, and accompanied by state troopers, began a surveillance of the North Derbigny Street address, the home of the two defendants, and also began to watch 4717 Shalimar Drive, the residence of one O. S. Roberson. About 3:00 o'clock in the afternoon the police saw the defendant McIlvaine drive up to 3117 North Derbigny in a 1959 Ford and go into the house. At this time he was wearing gray pants and a gray work shirt. No one else was seen to leave or enter these premises during the rest of the afternoon. Officers watching the Shalimar Drive address observed a 1956 Chevrolet back out of the driveway at about 8:00 o'clock that night. The police followed the Chevrolet and soon saw that it was headed in the direction of the North Derbigny Street address. Officers stopped this car about one-half block from the North Derbigny Street address, and recognized its two occupants as Jackie Krohn, one of the defendants here, and O. S. Roberson. Both Jackie Krohn and Roberson were at this time placed under arrest by the police, the arrest being made without a warrant. After this arrest the officers went to 3117 North Derbigny with the search warrants for these premises which they had in their possession. One of the officers knocked on the door, and when the defendant McIlvaine appeared, the officer identified himself as such, placed McIlvaine under arrest, also without a warrant, and

served him with the search warrant. Both Jackie Krohn and Roberson were brought to this dwelling, and the police made a search of the premises. In the bedroom the officers found draped over a chair the gray work shirt which McIlvaine had been wearing when he entered the home that afternoon. In the pocket of this shirt one of the officers found the narcotics described in the bill of information. McIlvaine admitted that the shirt was his, but denied any knowledge of the narcotics.

"The defendants Jackie Krohn and Daniel McIlvaine were living together as husband and wife at 3117 North Derbigny, where the narcotics were found. This was a halfdouble with only one bedroom, and no one lived there except the two defendants. Both defendants were shown to be users of narcotic drugs, and both had fresh hypodermic needle marks on their arms on the night of their arrest. Evidence adduced under the motion to suppress taken before trial disclosed that one or more members of the narcotic squad who participated in the operation knew the two defendants were narcotic addicts, having arrested or 'handled' them in this connection on other occasions, and that the officers were fully aware that the two defendants lived at 3117 Derbigny Street."

■ The evidence at issue, in order to be admissible, must be the product of a search incident to a lawful arrest, since the officers for the purposes of this consideration had no valid search warrant.

Article 60 of the Code of Criminal Procedure provides:

"Any peace officer may, without a warrant, arrest a person:

"(1) For the commission of any felony or misdemeanor committed in his presence;

"(2) When such person has committed a felony although not in the presence of the officer;

"(3) When a felony in fact has been committed and he has reasonable cause to believe that such person has committed it;

"(4) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it * * *.

\* \* \* \* \* \* "

■ We start with the proposition that the reasonableness of an arrest and a search and seizure made as an incident thereto is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

■ Reasonable cause to make an arrest without a warrant exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a felony has been or is being committed. State v. Green, supra; State v. Aias, supra; State v. Calascione, supra. See also Ker v. California, supra.

■ The information within the knowledge of the officers in the instant case at the time they arrested McIlvaine and Krohn, the trial judge found, clearly furnished grounds for a reasonable belief that the accused had committed and were committing the offense of possession of narcotics. The officers had conducted a surveillance of 3117 North Derbigny on many previous occasions and they were aware that these defendants lived there. The confidential information concerning the concealment of narcotics and burglary tools at 3117 North Derbigny which was given to Officers Favalora and Duffy and Lieutenant Giarrusso came from an individual known to the officers, a person who had already given them reliable information in other cases. That this information was hearsay does not destroy its entire value in establishing reasonable or probable cause. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Draper v. United States, 358 U.S.

307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). It is not necessary that the evidence available to the arresting officers be sufficient to convict, it need only establish a reasonable or probable cause for believing that a felony was being committed.

The important point to remember here is that Favalora and his fellow officers knew more about McIlvaine and Krohn than they set out in the affidavit supporting the search warrant.

An additional circumstance known to the arresting officers in this case was the obvious fact that McIlvaine, Krohn and their friend O. S. Roberson were on the verge of holding a rendezvous at 3117 North Derbigny. This fact, although insignificant when considered alone, assumed color and meaning when viewed against the background of the other information known to the police—the fact that these were drug addicts and that word had come from a known reliable informer that narcotics were concealed at 3117 North Derbigny, the very location on which they were converging. It was not unreasonable for the officers to conclude that the impending meeting of these three persons at the North Derbigny address was, in all probability, for the purpose of using the narcotics reputedly in that house.

We, like the trial judge, are of the opinion that the facts and circumstances were sufficient to justify men of average caution

in the belief that the felonies of possession of narcotics and attempted possession of narcotics were being committed, hence, the arrests were valid under Article 60 of the Code of Criminal Procedure and the search made of the premises where McIlvaine was arrested as an incident of that arrest was reasonable under "fundamental criteria" laid down by the fourth amendment and in opinions of the United States Supreme Court applying the amendment. The narcotics seized as a result of that search, then, were admissible in evidence. Ker v. California, supra; Draper v. United States, supra. See also Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964).

 The law has not ordained hard and fast rules for the determination of reasonableness. The facts and circumstances of each case must be judged separately, with wide latitude accorded the trier of facts. That determination should not be overturned unless there is clear error. With these basic considerations in mind, we think it is entirely probable that inferences and conclusions from facts may be made in a narcotics case which may conceivably offend standards of reasonableness in another case. The very nature of narcotics transactions, the places where they occur and the parties involved dictate that a different standard should apply if common sense and reason are to play a part in the determination of reasonableness.

In view of our finding, it is unnecessary to pass upon the alternative contention that the case should be remanded to afford the State an opportunity to show whether Officer Favalora gave verbal information to the magistrate who issued the search warrant in addition to that contained in the affidavit tending to show probable cause for its issuance.

The convictions and sentences are affirmed.

McCALEB, Justice (dissenting).

In view of the admitted fact that the search of appellants' dwelling (and the seizure resulting therefrom) was made solely under the authority of an illegal search warrant, it appears to me that the State is in no position to advance the alternative claim that the search and seizure is nonetheless valid because it *could* have been made as an incident to a lawful arrest.

However, conceding that this inconsistency of position may be alternatively taken in answer to a charge of invasion of constitutional rights, I fail to discern any act or circumstance in the chain of events, narrated in our original ruling (245 La. 649, 160 So.2d 566) and reiterated in the instant opinion, culminating in the arrest of the appellants, except for the tip given by the informer (found to be insufficient by the U. S. Supreme Court as a basis for the issuance of the search warrants), which brings the arrests within the acceptable

standard employed by the Federal courts (see Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726) for determining the reasonableness of the officers' action. See Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503; Cf. Draper v. U. S., 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. True, the officers knew that the defendants were addicts and had been previously convicted of possession of narcotics. But knowledge that a person is a drug addict and has been convicted of possession of narcotic drugs, while a matter to be considered in determining the legality of the arrest, does not, in the absence of other reliable *factual* information (as distinguished from the informer's conclusion), supply reasonable grounds for making an arrest— unless we are to say that known drug addicts are not entitled to the same constitutional guarantees as other persons. Yet, that is what the majority opinion suggests —i. e.—that narcotic arrests should be governed by a less rigorous standard of reasonableness than that obtaining in other cases. The Constitution, however, extends *its protection against* unreasonable searches and seizures to all and I find no basis in law for the formulation of special rules or relaxed standards for determining reasonableness in testing the validity of arrests for particular crimes.

I respectfully dissent.