Edward Francis **CROOK**

v.

C. Murray **HENDERSON**, Warden, Louisiana State Penitentiary.

No. 1048.

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

March 17, 1970.

G. Patrick Burvant, Baton Rouge, La., for petitioner.

Louise Korns, Asst. Dist. Atty., Parish of Orleans, New Orleans, La., for respondent.

## MISCELLANEOUS

WEST, Chief Judge:

Edward Francis Crook, presently incarcerated on death row at Louisiana State Penitentiary, petitions this Court for a writ of habeas corpus. He was convicted by a jury of aggravated rape and was sentenced, on April 24, 1968, to death. He bases his petition on two grounds, (1) that his constitutional rights were violated by the introduction of evidence of a prior rape at his trial, and (2) that the jury which convicted him was chosen by a method which excluded veniremen for cause because they voiced general objections to the death penalty, in violation of Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), which by its own terms applies retroactively. After reviewing the very complete State Court record in this case, this Court concludes that there is no merit to petitioner's first contention, and that his second contention is premature insofar as this Court is concerned.

The record discloses that on the night of September 29, 1967, Crook forced a Mrs. Lois Purvis into his automobile at gun point as she walked home alone after leaving a bus which she had ridden from work. He forced Mrs. Purvis to lie down on the back seat of his car, drove to another part of town, raped her, took her back to the general area where he had picked her up, and then rode away.

Five nights later, on October 4, 1967, he perpetrated another rape in identical fashion. This time his victim was a young woman eighteen years old, Miss Elizabeth Callico. She too was forced into his car at gun point as she walked home from work after leaving a bus, driven to another part of town, assaulted, and returned to the general area in which she had been picked up.

On the following night Crook was arrested on the basis of descriptions given the police by both of these victims. He was subsequently indicted by a grand jury for the rape of Miss Callico, entered a plea of not guilty and not guilty by reason of insanity, tried by a jury, convicted, and pursuant to Louisiana law, sentenced to death.

At his trial the State opened its case by having Miss Callico recount the details of the crime against her, the crime for which Crook was being tried. After Miss

Callico finished testifying, the State called Mrs. Purvis, who told of the rape to which she had been subjected. It is the evidence of this rape to which Crook objects.

The Louisiana Supreme Court considered the question of whether or not the admission was error and concluded that it was not. State v. Crook, 253 La. 961, 221 So.2d 473 (1969). Although the reason advanced by the State at the trial in support of its right to offer this evidence was that it would prove system, intent, and guilty knowledge, the apparent reason for the Louisiana Supreme Court's decision that the defendant's objection to the evidence was without merit is found in the following language:

> "In sexual offenses, such as rape, evidence of similar recent acts of the defendant is admissible for corroboration and to show the intent and licentious disposition of defendant. LSA–R.S. 15:445, 15:446; State v. Cupit, 189 La. 509, 179 So. 837; State v. McCollough, 149 La. 1061, 90 So. 404.

> "The offense shown was committed five days earlier than the one charged under similar circumstances. Hence, it is closely related by time and method to the present offense." 221 So. 2d 477. See also Brent v. White, 276 F.Supp. 386 (E.D.La.1967).

Mr. Justice Barham dissented, taking the position that: (1) it was improper to admit evidence of another crime to show "licentious disposition" unless it was properly done by the State in rebuttal to attack the character of the defendant after the defendant himself had put his character at issue, which was not the case here; and (2) it was improper to use such evidence to show intent or guilty knowledge since under Louisiana law these things are not elements of the crime of aggravated rape. It was his opinion that since neither intent nor knowledge were elements of the crime with which the defendant was charged, evidence of a prior rape could have no bearing upon the guilt or innocence of the defendant in this case.

■■ While it is the opinion of this Court that the majority opinion of the Louisiana Supreme Court correctly states the law of Louisiana, and that there is nothing in that law that is prohibited by the Constitution or laws of the United States, still there is another valid reason why, in this case, evidence of a similar offense committed by the same defendant five days prior to the one for which he was being tried was admissible in evidence.

Mr. Justice Harlan, writing for the majority in Spencer v. State of Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), clearly states the pertinent law of evidence as follows:

> "The rules concerning evidence of prior offenses are complex, and vary from jurisdiction to jurisdiction, but they can be summarized broadly. Because such evidence is generally recognized to have potentiality for prejudice, it is usually excluded except when it is particularly probative in showing such things as intent. * * * an element in the crime, * * *; identity, * * *; malice, * * *; motive, * * *; a system of criminal activity, * * *; or when the defendant has raised the issue of his character, * * *; or when the defendant has testified and the State seeks to impeach his credibility, * * *.

> "In all these situations, as under the recidivist statutes, the jury learns of prior crimes committed by the defendant, but the conceded possibility of prejudice is believed to be outweighed by the validity of the State's purpose in permitting introduction of the evidence. * * *

> "This general survey sufficiently indicates that the law of evidence, which has been chiefly developed by the States, has evolved a set of rules designed to reconcile the possibility that this type of information will have some prejudicial effect with the admitted usefulness it has as a factor to be considered by the jury for any one of a large number of valid purposes." 87 S.Ct. at 652.

■ In the present case, the defendant denied that it was he who had committed the rape for which he was being tried. His very identity was at issue. The identity of the perpetrator of the crime was in serious dispute. It was, in other words, his word against that of his victim who claimed to positively identify the defendant as the guilty person. The evidence of the prior crime in this case was admissible to prove the identity of the defendant. There were several items of evidence that were exactly the same in both cases, such as the 1967 green Ford automobile which was used in both cases; one side of the automobile that was used in both cases was damaged so that the door on that side would not open; both of the witnesses saw the same pair of dice hanging from the rear view mirror in the automobile in which they were raped; both witnesses saw what appeared to be the same toy pistol which had been used to intimidate them in the automobile. Mrs. Purvis, the victim of the prior rape, positively identified the defendant as the owner and operator of the motor vehicle involved. Thus her testimony was necessary to establish the identity of the defendant as the person whose automobile was used in the perpetration of both of these crimes. Certainly this is probative evidence on the question of identity. That some prejudice might result from such evidence cannot be disputed, but since the identity of the defendant was a crucial issue in dispute, certainly evidence tending to corroborate the evidence of Miss Callico concerning the identity of the defendant was admissible in evidence.

■ And, as a matter of fact, it is highly questionable in this case as to whether or not this evidence was really prejudicial to the defendant. During the course of this trial, the defendant took the witness stand in an apparent attempt to establish his insanity and recounted for the jury a long history of mental malfunction and sexual aberrations. It is difficult to see how he can now claim that his case was prejudiced by the evidence of a prior rape when he himself put forth such convincing evidence of his propensity for such crimes. If anything, the evidence of the rape of Mrs. Purvis was in furtherance of his own chosen trial strategy.

But in any event, it is the opinion of this Court that if some prejudice resulted from the introduction of that evidence, the prejudice is outweighed by the validity of the State's purpose in introducing that evidence. There is no merit to petitioner's contention that his constitutional rights were violated by the introduction of that testimony.

■ The second ground upon which petitioner seeks a writ of habeas corpus is that his constitutional rights were violated when the State was allowed to successfully challenge some ten prospective jurors because of their stated scruples against the infliction of capital punishment. It is petitioner's contention that this was allowed to be done in contravention of the Supreme Court holding in Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). A review of the record in this case discloses the fact that this contention has never been presented to the State Court for its consideration, and is being raised by petitioner for the first time in these proceedings. The record reflects that one of the bills of exception relied upon by petitioner in his appeal to the Louisiana State Supreme Court from his conviction and sentence concerned his objection to a question about capital punishment asked by the District Attorney duing he voir dire examination of prospective jurors. In the reported decision of the Louisiana Supreme Court in connection with petitioner's appeal, State of Louisiana v. Edward Francis Crook, 253 La. 961, 221 So.2d 473 (1969), appears the following:

"[8] The defendant reserved Bill of Exceptions No. 4 when his objection to the district attorney's question was overruled during the voir dire examination of certain prospective jurors. The

question and objection are set forth in the Bill of Exceptions as follows:

" 'BY MR. MURRAY: At this time I think it's proper to ask if any of you gentlemen have any conscientious objections or scruples against the infliction of capital punishment, if the facts of the case warrant it?

" 'BY MR. KOCH: If your Honor please, I object to the question Mr. Murray has posed to the jury. Even though I know the law is against me, I think someday it might be overruled. It tends to let the State select a blue ribbon panel. I don't think that question should be asked. The State and defense should never be able to ask that question. I make my motion for mistrial based on the question be asked.

" 'BY THE COURT: The objection is overruled and the motion for mistrial is denied.

" 'BY MR. KOCH: To which ruling of the Court I respectfully reserve a bill of exceptions, making part thereof the pertinent article allowing the District Attorney to ask that question, the question asked by the district attorney, my objection and the ruling of the Court.

"Defendant relies on Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, decided by the United States Supreme Court after the present trial. There, the Court held it was improper to exclude for cause prospective jurors who voiced only general objections, or scruples, against the death penalty. We find nothing in the decision that would render improper the District Attorney's question concerning the juror's objections to capital punishment. Rather, the thrust of the decision is toward requiring a more careful examination of the prospective juror's attitude toward capital punishment. * * *

"Hence, the question posed by the District Attorney is proper."

After this is the following footnote:

"The bill of exceptions fails to raise the propriety of the subsequent exclusion of several jurors for cause under the test announced in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776."

Thus, it is clear from the record in this case that the question presented here has never been presented to nor passed upon by the State Courts of Louisiana. Petitioner's application to this Court for habeas corpus affirmatively states on its face that except for his appeal to the Louisiana State Supreme Court, no other relief by way of habeas corpus or otherwise has been sought from any State Court.

In a similar situation, the Fifth Circuit Court of Appeals has stated:

"But where the federal habeas court is unable to determine unequivocally that an issue has been considered and ruled upon by the state courts, comity requires us to 'put the fact finding and law finding responsibilities squarely on the Florida Courts where, initially at least, it belongs.' " Williams v. Wainwright, 410 F.2d 144 (1969).

Thus, in this case, comity requires us to refrain from passing on this issue until it has been presented to the proper court or courts of the State of Louisiana for their consideration.

■ The same remedies for deprivation of constitutional rights that are available to petitioner in this Court are available to him in the proper State Court. *Witherspoon* is just as binding on the State Court as it is upon this Court. If, as contended by petitioner, even one prospective juror was improperly excused merely because he expressed a general objection to capital punishment, *Witherspoon* teaches that the death sentence imposed simply cannot stand. Under *Witherspoon*, in such a situation, the conviction is not rendered illegal but the death sentence cannot stand. It is incumbent upon the proper State Court, if requested by petitioner to do so by way of State habeas corpus proceedings,

to examine closely the voir dire examination contained in the record of this case and to determine whether or not *any* prospective juror or jurors were improperly excused for cause in violation of the holding in *Witherspoon*. Until that has been done, this question is not properly before this Court. 28 U.S.C.A. § 2254; Love v. State of Alabama, 5 Cir., 411 F.2d 558 (1969); Williams v. Wainwright, supra.

For these reasons, petitioner's application for a writ of habeas corpus must be denied and judgment will be entered accordingly.