275 So.2d 740 (1973)
STATE of Louisiana
v.
William F. EDGECOMBE, Jr.
Nos. 52451, 52452.
Supreme Court of Louisiana.
March 8, 1973.
Rehearing Denied April 19, 1973.
*742 Perez, Fernandez & Seemann, Melvyn J. Perez, Manuel A. Fernandez, G. Frederick Seemann, Chalmette, Milton P. Masinter, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Leander H. Perez, Jr., Dist. Atty., Charles H. Livaudais, Asst. Dist. Atty., for plaintiff-appellee.
HAMLIN, Chief Justice:
Defendant appeals from his convictions of the crimes of aggravated rape and aggravated kidnapping and his sentence to death. (The alleged crimes were allegedly committed consecutively by the defendant; there were separate indictments, but the defendant was tried for both crimes during one prosecution in order to avoid the issue of double jeopardy.) LSA-R.S. 14:42 and 14:44. During the proceedings, some thirty-four bills of exceptions were reserved and are presented for our determination.
Defense counsel present their argument under four headings, each embodying bills of exceptions reserved by counsel during the proceedings and pertinent to the subject heading.
I. Concealment of Pertinent Evidence
Bill of Exceptions No. 6
Bill of Exceptions No. 8
Bill of Exceptions No. 34
Bill of Exceptions No. 6 was reserved when the trial court denied defense counsel's prayer for oyer which requested: "Access to an examination by counsel to examine all physical evidence taken from the accused or allegedly used by the accused in the commission of an alleged offense, so that they may have the opportunity of countering any expert testimony offered by the prosecution." (Vol. I, p. 91, Par. 2 of Prayer for Oyer)
Bill of Exceptions No. 8 was reserved when the trial court denied defense counsel's prayer for oyer which requested: "A copy of any written or oral reports concerning polygraph, chemical, medical, formological or any other report of tests made by the State or by someone acting under the direction and control of the State." (Vol. I, p. 92, Par. 4 of Prayer for Oyer)
Bill of Exceptions No. 34 was reserved when the trial court overruled defense counsel's motions in arrest of judgment and for a new trial.
Counsel for the defendant contend that initially defendant was confronted with the problem of ascertaining the nature of the physical evidence in the possession of the State which it contended or would contend at trial linked the defendant to the commission of the crimes charged. They argue that the obvious intent of the prayer for oyer was to obtain the result of scientific tests in order that the same could be utilized by the defendant if such tests were indicative of defendant's innocence. They further argue that defendant was not requesting a full disclosure but only an opportunity to ascertain physical evidence in order to prepare his defense, ascertain the favorable nature of the evidence, or subject, or the opportunity to subject the same to recognized laboratory, clinical, or diagnostic tests. Counsel still further argue that there was suppression by the State of evidence tending to be favorable to the defendant; this suppression, they say, amounted to a violation of defendant's constitutional rights, particularly the right to a fair trial and effective representation by counsel. Amendments VI and XIV to the Constitution of the United States.
Submitted in evidence by the State during trial were the dress and under garments worn by the victim on the night the instant offense was committed. On direct examination by the State, there was testimony adduced with respect to seminal fluid; on cross examination by defense counsel, testimony was adduced with respect to blood type. Prior to trial, defense counsel apparently surmised that tests had *743 been made by the State on the victim's clothing; defense counsel in its prayer for oyer demanded inspection of the clothing and the results of the tests. Infra, we shall hold that they were not entitled to such inspection.
Initially, we hold that the case of State v. Migliore, 261 La. 722, 260 So.2d 682, is not apposite to the instant matter. In Migliore, we granted defendant pretrial inspection of an alleged dangerous substance; he was charged with having in his possession a dangerous substance, and we felt that he was entitled to make an independent inspection of the substance in order to analyze the substance's ingredients. The substance had to be dangerous in order for the charge to stand. Such is not the case of the evidence herein involved.
It is legion in our jurisprudence that "* * * an accused in a criminal case is without right to a pre-trial inspection of the evidence upon which the prosecution relies for a conviction. State v. Hunter, 250 La. 295, 195 So.2d 273, and authorities cited therein. See, also, State v. Pailet, 246 La. 483, 165 So.2d 294, in which we held that `all evidence relating to a pending criminal case which is in possession of the State is privileged and not subject to inspection by the accused unless and until it is offered in evidence at the trial. The single exception to this rule has been made in instances where the State has in its possession a written confession of the accused.' Cf. State v. Hall, 253 La. 425, 218 So.2d 320." State v. Clack, 254 La. 61, 222 So.2d 857 (1969). See, State v. Migliore, 261 La. 722, 260 So.2d 682.
The record discloses that there was no deception on the part of the State with respect to the evidence sought by defense counsel. They make no averments of deliberate deception or presentation of known false evidence. See, Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed.2d 104. There are no averments by defense counsel that they were taken by undue surprise; there are no averments that they were precluded from having the defendant's blood typed; they make no averments that they were refused a continuance during the hearing of the prayer for oyer. The evidence sought was privileged to the State; it was a part of its proof upon which it was relying for a conviction. Defendant was not entitled to inspection of the evidence sought in Paragraphs 2 and 4 of his Prayer for Oyer. Defendant's constitutional rights were not violated, and the trial court committed no reversible error in its denial. See, State v. Taylor, 253 La. 653, 219 So.2d 484; State v. Daniels, 262 La. 475, 263 So.2d 859; State v. McLeod, 264 La. 239, 271 So.2d 45; State v. Ranker, 263 La. 914, 269 So.2d 812; State v. Brumfield, 263 La. 147, 267 So.2d 553; State v. Jones, La., 267 So.2d 559; State v. Anderson, 254 La. 1107, 229 So.2d 329; State v. Crook, 253 La. 961, 221 So.2d 473.
The case of Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) is not apposite to this matter because defense counsel herein have not shown that the evidence sought was favorable to the defendant. In Brady, the United States Supreme Court held: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." See, State v. Gladden, 260 La. 735, 257 So.2d 388; State v. Bailey, 261 La. 831, 261 So.2d 583. (Emphasis ours)
Bill of Exceptions No. 34 avers as stated supra that the trial court committed error in refusing to grant defendant's motions for a new trial and in arrest of judgment. These matters will be discussed infra where we will find that Bill of Exceptions No. 34 is without merit.
Bill of Exceptions Nos. 6 and 8 are without merit.

*744 II. Constitutionally Impermissible Identification
Bill of Exceptions No. 10
Bill of Exceptions No. 24
Bill of Exceptions No. 34
Bill of Exceptions No. 10 was reserved when the trial court denied that part of defense counsel's prayer for oyer which requested: "A copy of all photographs of the defendant and of others shown to the victims of the crimes for which the defendant is charged herein, wherein the victim identified or reported to identify photograph of the defendant." (Vol. I, p. 92, Par. 6 of the Prayer for Oyer)
Bill of Exceptions No. 24 was reserved when the trial court overruled defense counsel's objection to the nature of the testimony of Melony Carmouche and Mary Ann Munson, witnesses for the State, on the following grounds: "That the testimony of the witnesses would tend to prove other facts and other crimes other than those crimes on trial at this hearing, and that the State is intending to use the witnesses to identify the defendant. That the witness identified the defendant by looking through a one-way mirror at the defendant on the night he was arrested, without the defendant being first afforded the opportunity to retain legal counsel."
As stated supra, Bill of Exceptions No. 34 was reserved to the trial court's denying defense counsel's motions in arrest of judgment and for a new trial.
The record discloses that prior to the defendant's bail hearing, the State presented to the victim a number of mug shots, and from the group, she selected a picture of the defendant.
Defense counsel contend that they needed the photographs for comparative purposes; they were necessary to show the possible deprivation of a constitutional right.
We find no need for a lengthy discussion of Bill No. 10; our reasoning supra with respect to Bills of Exceptions Nos. 6 and 8 applies to the instant bill.
Additionally, during defendant's bail hearing and during trial, the victim definitely identified the defendant. This identification was independent of the selection she had made of photographs. Her identification during trial was as follows:
"Q. Now, Joanne, do you know now who it was that did that to you that night?
"A. Yes, sir, I do.
"Q. Do you see that man in the courtroom right now?
"A. Yes, sir.
"Q. I'm going to ask you to get up from that witness chair, to point out the man who did that to you that night.
"A. Right over there.
"Q. Would you come down here so we can make sure of the person to whom you are pointing?
(Witness complies.)
"THE WITNESS:
"Him.
"MR. LIVAUDAIS:
"Step closer now.
"THE WITNESS:
"He did it.
"BY MR. LIVAUDAIS:
"Q. I want you to take a closer look than what you just took, because this jury has to be sure whether or not this is the man that did this to you.
"A. Yes, sir, he's the one.
"Q. You are sure of that?
"A. Positive.
"Q. I want you to look at him, not at me.
"A. Yes, sir, he's the one."
*745 As to Bill of Exceptions No. 24:
The following per curiam of the trial court to Bill of Exceptions No. 24 recites the facts connected with the reservation of the bill and properly disposes of defense counsel's contentions:
"Bill of Exception No. 24 was reserved and taken by the defense as to the entire testimony of one Mary Ann Munson and one Melony Carmouche which witnesses were offered by the state in order to show knowledge, system and intent as permitted under the provisions of LSA-R.S. 15:445, 446. Mary Munson had testified previously on the hearing for bail and the Court, as consented to by counsel, used the transcript of her testimony at such hearing to make its determination as to whether to allow Miss Munson to testify before the jury. The jury was removed from the courtroom so that the Court could listen to the testimony of Melony Carmouche, which testimony the Court considered before making its judgment as to whether Miss Carmouche would be allowed to testify. It was the judgment of the Court that the state be permitted to present both Melony Carmouche and Mary Munson and the defense reserved and took a Bill of Exception to the Court's ruling * * *
"The Court based its decision on Mary Munson's testimony that on January 27, 1970, seven (7) days after the incident involving the complainant, a male attempted to force her to get into an automobile at the point of a gun and was evidently frightened away by Miss Munson's display of courage. Miss Munson described the modus operandi, the type of vehicle used and the gun used all in a compatible fashion with that described by Jo Ann Buras Wigley.[1] In addition thereto, Mary Munson *746 positively identified the defendant as the person who attempted to force her into his automobile, Melony Carmouche recited an incident that happened on April 9, 1970, eight (8) days prior to the arrest of the defendant, when she was forced to get into an automobile at the point of a gun by a male subject who thereafter forced her to perform a sex act on him. Miss Carmouche described the modus operandi, the type of vehicle used and the gun used all in a compatible fashion with that described by Jo Ann Buras Wigley. In addition thereto, Miss Carmouche positively identified the defendant as the person who committed the described offense against her. * * *
"In allowing the testimony of the said witnesses before the jury the Court based its decision on State v. Ferrand, 1946, 210 La. 394, 27 So.2d 174, 167 A.L.R. 559; State v. Cupit, 1938, 189 La. 509, 179 So. 837; State v. McCollough, 1922, 149 La. 1061, 90 So. 404; and State v. Crook, 253 La. 961, 221 So.2d 473, considered on habeas corpus proceeding entitled Crook v. Henderson, D.C., 310 F.Supp. 200.
"* * *
"As part of its exception the defense questioned the legality of a pre-trial identification by Mary Munson and Melony Carmouche of the defendant, alleging that the defendant did not have benefit of legal counsel, and based his argument conclusions on the testimony of Mary Munson and Melony Carmouche. Other than the testimony of these two witnesses, which was solicited on cross-examination of Mary Munson and Melony Carmouche by the defense, no evidence was presented as to the mechanics of the lineup nor any evidence that the defendant did not have the benefit of legal counsel before such lineup. The state for its part made no offer to introduce as part of its case identifications of the defendant by Miss Munson and Miss Carmouche, at a pre-trial lineup. And, accordingly, the Court did not have occasion to rule on the matter in that respect other than to permit both Miss Munson and Miss Carmouche to testify before the jury as to the incidents in which they identified the defendant as being involved. When the defendant was presented for identification before the jury by the said witnesses, no objection was made by the defense to such presentation. On identification of the defendant before the jury responses of Miss Munson and Miss Carmouche identifying the defendant as the person who had accosted them was positive and without equivocation. Since there was no showing to the Court of any circumvention of procedural practices to the prejudice of the defendant, and since such could not be assumed by the Court, the Court was of the opinion that the defendant did not suffer any deprivation of his constitutional rights. The defendant did not testify at any time during pre-trial or in the trial proceedings. The matter of pre-trial identification was not a surprise to the defendant inasmuch as Miss Munson was cross-examined by the defense on this point at the hearing for bail, * * * In addition thereto, the Court was of the opinion that the courtroom identification of the defendant by both Miss Munson and Miss Carmouche was of independent origin untainted by pre-trial confrontation and that identification at trial was properly a matter for jury evaluation. The Court feels that admission of such testimony was within the yardstick of jurisprudence as set out in State v. Singleton, 253 La. 18, 215 So.2d 838; State v. Henderson, 253 La. 981, 221 So.2d 480; *747 State v. Johnson, 255 La. 314, 230 So.2d 825; and State v. Pratt, 255 La. 919, 233 So.2d 883." See, also, State v. Smith, 260 La. 185, 255 So.2d 734; State v. Pierre, 261 La. 42, 259 So.2d 6.
Herein, defense counsel object to the pre-trial identification of the defendant by Misses Munson and Carmouche. They urge that since the defendant was not represented by counsel and was unaware of the fact that the two young ladies were identifying him to police officers, his constitutional rights were violated.
As explained by the trial judge supra and as held in the jurisprudence cited supra, an independent in-court identification precludes vitiation of conviction because of a questionable pre-trial identification. The two young ladies identified the defendant in court as the person who had accosted them; they did not identify him as the person who had allegedly raped the victim herein involved. The testimony of the two witnesses was admissible, and its nature was not prejudicial to the defendant's rights.
Additionally, we might add that at the time the two young ladies identified the defendant at the police station, immediately after his arrest, and such identification being done by mirrors and unknown to defendant, he had not been arraigned. Under the recent United States Supreme Court case of Kirby v. State of Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), counsel was not required at the pre-arraignment identification of Misses Munson and Carmouche; their identification was therefore not unconstitutionally prejudicial.[2]
Bill of Exceptions No. 10 is without merit.
Bill of Exceptions No. 24 is without merit, but will be further discussed under the next subject heading.
Bill of Exceptions No. 34 is without meritinfra.
III. Prejudicial Effect of Evidence Purporting to Show Knowledge, System and Intent
Bill of Exceptions No. 24
Bill of Exceptions No. 24, as stated supra, was reserved when the trial judge overruled defense counsel's objection to certain testimony given by the State's witnesses, Mary Ann Munson and Melony Carmouche.
Under this subject heading, counsel contend that the testimony was allowed for the purpose of showing knowledge, system, and intent as provided for in LSA-R.S. 15:446,[3] but that the testimony did not *748 show knowledge, system, and intent. They argue that the recited purpose was a guise to prove the offense charged, and that in the instant case, the evidence was inflammatory and prejudicial to defendant to such an extent that he was deprived of his rights under the due process clause of the Fourteenth Amendment to the United States Constitution.
They also argue that defendant was deprived of the effective representation of his counsel, said counsel being unable to counter the testimony as efficiently as they would have desired.
In his opening statement to the jury, the District Attorney stated in part:
"The State will produce other witnesses and evidence to corroborate the testimony of witnesses herein, and to show the intent and licentious disposition of the defendant, William F. Edgecombe, Jr., and to prove the identity of the defendant William F. Edgecombe, Jr., as being the operator of the automobile involved in these crimes upon JoAnn Buras, and to identify him as the person who did commit both aggravated kidnapping and aggravated rape upon the victim, JoAnn Buras."
(No bill of exceptions was reserved to the above part of the District Attorney's opening statement.)
In State v. Crook, 253 La. 961, 221 So.2d 473, 477 (1969), we said: "In sexual offenses, such as rape, evidence of similar recent acts of the defendant is admissible for corroboration and to show the intent and licentious disposition of defendant. LSA-R.S. 15:445, 15:446; State v. Cupit, 189 La. 509, 179 So. 837; State v. McCollough, 149 La. 1061, 90 So. 404." See, State v. Whitsell, 262 La. 165, 262 So.2d 509 (1972) which upheld the ruling of State v. Crook.
In Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919, the United States Supreme Court held that evidence of similar and related offenses were admissible in vidence to show a consistent pattern of conduct highly relevant to the issue of intent. In United States v. Hampton, 7 Cir., 457 F.2d 299 (1972), the Court stated: "It is also established law that evidence of other crimes for which the defendant is not charged is admissible to establish essential elements of the charged crimes, to show a single scheme or common pattern of illegal conduct. * * *" See, also, United States v. Clifton, 5 Cir., 447 F.2d 970 (1971); State v. Bradford, 259 La. 381, 250 So.2d 375 (1971); State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972).
The instant prosecution is one for rape and kidnapping. Intent is an essential ingredient of the offenses. The testimony of the two young ladies had to do with alleged approaches by the defendant to them. Their testimony did not have to do with totally unrelated matters. We find that their testimony related to the modus operandi of the defendant; it showed a system of conduct. The District Attorney in his opening statement in saying that the defendant had a licentious disposition was saying that the defendant allegedly carried on a licentious mode of conduct. The testimony of the two ladies was therefore offered for the purpose of showing modus operandi and not for the purpose of proving the guilt of the defendant.
In a criminal prosecution, the burden is on the State to prove beyond reasonable doubt the guilt of the defendant of the crime with which he is charged; this burden must be borne with responsibility, fairness, integrity, and legal knowledge. The jury assesses the guilt or innocence of the defendant; it must be given a thorough presentation by the State of the alleged facts which comprise the defendant's alleged guilt. The defendant's right to a fair trial was not prejudiced by the State's offering the testimony of Misses Munson and Carmouche. Additionally, the trial judge charged the jury in part as follows:
"Testimony or evidence offered of acts of the defendant relating to incidents other than the acts charged is not admissible to *749 prove the offense charged. In other words, you must be satisfied as to the guilt or innocence of the defendant on the facts relating to the offense charged in order to reach a decision."
Bill of Exceptions No. 24 is without merit.
Bills of Exceptions Nos. 7 and 9 are not briefed by counsel for the defendant. They urge that the trial court erred in denying their prayer for oyer of: "Copy of warrant of arrest, affidavit of probable cause, search warrant, affidavit in support thereof, and the inventory of property seized." (Vol. I, p. 91, Par. 3 of Prayer for Oyer)

And
"A copy of any and all drawings, diagrams, and/or sketches made by the State or by anyone acting under their direction and control in connection with this matter. " (Vol. I, p. 92, Par. 5 of Prayer for Oyer)
We shall not discuss the bills, but we say in passing that the matters urged were thoroughly considered supra under the subject heading of Concealment of Pertinent Evidence and were found to be without merit.
Bills of Exceptions Nos. 7 and 9 are without merit.
IV. Patent Errors Committed by the Trial Judge
Among the bills of exceptions listed under the above heading are Bills of Exceptions Nos. 1, 2, 3, 4 and 5. These bills were reserved during the bail hearing. Because of the lengthy trial and a reurging and reiteration of a number of the averments in the bills, there is no need for a discussion of the bills herein. Counsel for the defendant state that the bills were reserved and noted herein so that the court would have the benefit of the entire record of this cause to show the circumstances attendant to this prosecution and averred prejudice inherent in the proceedings.
Bills of Exceptions Nos. 1, 2, 3, 4 and 5 are without merit.
Bill of Exceptions No. 11 (Listed by defense counsel under Patent Errors Committed by the Trial Judge)
Bill of Exceptions No. 11 was reserved when the trial court denied defense counsel's motion to quash the indictment preferred against the defendant.
The motion to quash avers in part:
"That the defendant is held chargeable for the crime of aggravated rape upon Jo Ann Buras, and inasmuch as the testimony of said victim upon examination in preliminary matters unequivocably shows that there was no entry of the male genital organs into the female genital organs as required by statute, the defendant may not be held chargeable for said crime inasmuch as by the testimony of the alleged victim no aggravated rape was committed and therefore the indictment against the defendant should be quashed."
The per curiam of the trial judge properly disposes of this Bill of Exceptions; it recites:
"* * *
"The defendant does not in this bill of exceptions raise any issue as to the sufficiency of the indictment or it being defective in failing to advise the defendant of the specific crime of which he was charged or the indictment failing to charge a valid offense. The defendant refers to testimony given by the alleged victim in a hearing on the defendant's application for bail going to the factual proof of the crime charged. Defendant in effect says that he has a valid defense to the indictment in that there was no `penetration,' a necessary essential of rape. Obviously this is a matter properly for proof or disproof on the trial of the defendant and not intended to be the subject of a motion to quash.
*750 "In State v. Masino, 214 La. 744, 38 So. 2d 622 your Honors stated as follows:
"`Here we are bound to reason from these factors: Does this indictment inform the court what offense is being charged, so that the proof will be restricted solely to the crime charged; and is the indictment sufficient on its face to support a plea of former jeopardy? These questions are answered in the affirmative. The issue to be decided on a motion to quash is whether or not the indictment itself is defective on its face, taking as true what is alleged in the bill of particulars. The fact that the defendants may have a good defense is not sufficient grounds to quash the indictment.'" See, also, LSA-C.Cr.P. Arts. 532 and 533 and the case of State v. Gerstenberger, 260 La. 145, 255 So.2d 720, 722 (1971), wherein this Court said: "The court in considering this motion to quash must accept as true the facts set out in the bills of information and in the bill of particulars, and determine whether as a matter of law they charge a crime. The evidence which may be taken on a motion to quash is limited to procedural matters and may not include a defense on the merits. * * * We do not consider the evidence taken here in the trial court."
Bill of Exceptions No. 11 is without merit.
Bill of Exceptions No. 12 (Listed by defense counsel under Patent Errors Committed by the Trial Judge)
Bill of Exceptions No. 12 was reserved when the trial judge denied defense counsel's motion to suppress. The motion recites:
"Now into court comes, William Frank Edgecombe, made defendant in the above numbered cause * * * and on showing to the court that certain evidence was seized in the Parish of Orleans, State of Louisiana, which evidence was seized by a law officer of the Parish of St. Bernard, State of Louisiana, and which evidence forms the basis of the charge against him in the above numbered and entitled cause, and on further showing that further evidence was seized by St. Bernard Sheriff's Office without the benefit of an arrest or search warrant or the alternative without the benefit of a valid search warrant. And that as a result of this illegal activity of the St. Bernard Sheriff's office in addition to, the arrest and search being conducted in the Parish of Orleans by a St. Bernard Sheriff's office official outside of his jurisdiction, said evidence is not admissible."
The matters urged in the instant bill are involved. The trial judge in his per curiam has ably recited pertinent facts and has made a correct legal disposition of the issues. The per curiam recites:
"Bill of Exceptions No. 12 was reserved based on the Court's decision on the defendant's motion to suppress evidence. Defendant's motion to suppress was couched in general terms without specification as to types of evidence, date or dates on which said evidence was gathered, date or dates of arrest and search, name or names from whom such evidence was taken, and without specification as to whether search was made of a person or place. The state objected to the general nature of the motion to suppress, * * * and the defendant upon inquiry by the Court qualified his motion to suppress, citing the arrest of the defendant on April 17, 1970 and claiming suppression of evidence gathered at the time of said arrest and subsequent to said arrest because of the illegal nature of the arrest.
"Circumstances of the defendant's arrest on April 17, 1970 were testified to, on examination by the defendant and the state, by Capt. Louis E. Reichert and Officer Thomas J. Bennett, employees of the St. Bernard Parish Sheriff's Office, who are respectively Capt. of Detectives and Radio Dispatcher. * * *
"Capt. Reichert testified that the arrest was the direct consequence of a `stake-out' and a chase of the defendant's automobile, *751 driven by the defendant, which started in St. Bernard Parish near the parish's northern boundary and continued into Orleans parish where the defendant in his vehicle was eventually stopped. Capt. Reichert testified that on April 17, 1970 two units were patrolling the Arabi, La. area in general and the bus line stops in particular and that the reason for such a patrol was because of the activities of an unknown but described person who had engaged in reported incidents of attempted kidnappings of girls and an alleged rape of one victim in St. Bernard Parish. Capt. Reichert testified that he was also looking for a particular type of vehicle in which said person was allegedly conducting his activities. * * *
"Capt. Reichert indicated that the chase of the defendant was initiated after an incident which happened during a surveillance of the defendant's vehicle which started upon his vehicle being noticed and make the subject of a surveillance by Capt. Reichert when it stopped for a red light in the Arabi area. He reported that during the course of his following said vehicle an attempt was made by the subject who was driving this vehicle to contact two young girls in a parking lot within blocks of the intersection where he had been first noticed. Capt. Reichert indicated that the aforementioned contact was precipitously broken off by the defendant who commenced a high speed get away followed by Capt. Reichert who followed the defendant at high speeds across a red stoplight at the intersection of Mehle and St. Claude Avenue in Arabi and on into New Orleans for some 25 blocks until an eventual halting of the defendant's vehicle with the assistance of New Orleans policemen who were reportedly alerted by Capt. Reichert thru Officer Bennett, radio dispatcher of the St. Bernard Sheriff's Office. Capt. Reichert testified that altho the defendant was suspect of violations of a more serious nature that arrest of the defendant was because of specific traffic violations during the course of the chase of the defendant's vehicle. Capt. Reichert's testimony as to the mechanics of the actual arrest and the confiscation of a weapon of said arrest are reported in Pages 74-84 of the transcript. He testified that what was apparently a gun was discovered on the front right floor board of the vehicle and it was noticed by Capt. Reichert where he had the defendant disembark from the vehicle and that said gun was immediately confiscated with the aid of the assisting New Orleans policemen.
"Relative to arrests and evidence seized as a product of such arrests your Honors reviewed guide lines of rights guaranteed to individuals under the Fourth Amendment to the Constitution of the United States and Section 7 of Article 1 of the Constitution of Louisiana in State v. Brown, 250 La. 1125, 202 So.2d 274, to-wit:
"(1) Significantly, these constitutional provisions do not guarantee that persons will be secure against any and all searches and seizures, only those that are unreasonable; consequently, the fact that defendants were arrested in the instant case without a warrant does not necessarily mean the arrest was illegal and that the capsule and bag discovered in the car were thus illegally obtained, making such evidence inadmissible at their trial as stemming from an unreasonable search and seizure.
"Strictly within the scope of these guarantees, the law of this state, codified by the Louisiana Legislature of 1928 with its enactment of Act No. 56 (Code of Criminal Procedure), and subsequently incorporated into the Revised Statutes of 1950 as R.S. 15:1-1039, provides that `Any peace officer may, without a warrant, arrest a person * * * when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it.' R.S. 15:60. `* * * the officer making the arrest shall inform the person arrested of his authority and the cause of the arrest' (R.S. 15:70), and `take from the person arrested, all offensive weapons or incriminating *752 articles which he may have about his person * * *.' R.S. 15:68. (The emphasis has been supplied.)
"`Reasonable beliefor "probable cause," as it is termed under the federal standardto make an arrest without a warrant exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a felony has been or is being committed.' State v. Johnson, 249 La. 950, 192 So.2d 135. See also, State v. Green, 244 La. 80, 150 So.2d 571; State v. Aias, 243 La. 945, 149 So.2d 400; State v. Calascione, 243 La. 993, 149 So.2d 417; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.
"(2) And under the jurisprudence universally prevailing in both the state and federal courts, a search may be made of the place where a legal arrest occurs for the purpose of seizing the things there found that are connected with the crime as its fruits, as well as other proof of guilt within the control of the accused. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; and State v. Calascione, 243 La. 993, 149 So.2d 417.
"In State v. Johnson, 249 La. 950, 192 So.2d 135, in discussing Search and Seizure and Reasonable Belief or Probable Cause to Arrest, your Honors stated as follows:
"`In resolving the first questions, we are guided by settled standards recognized by adjudications of our highest courts relating to search and seizure under both State and Federal Constitutions.
"`(1) Louisiana's standard is set by the legislature. Article 60 of our Code of Criminal Procedure permits an arrest by a peace officer without a warrant, "When a felony in fact has been committed and he has reasonable cause to believe that such has committed it. * * *"
"`(2) Reasonable beliefor "probable cause," as it is termed under the federal standardto make an arrest without a warrant exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a felony has been or is being committed. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959); State v. Green, 244 La. 80, 150 So.2d 571 (1963); State v. Aias, 243 La. 945, 149 So.2d 400 (1963); State v. Calascione, 243 La. 993, 149 So.2d 417 (1963).
"`(3) Compliance with these standards is, in the first instance, a substantive determination to be made by the trial court from the facts and circumstances of the case. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. McIlvaine, 247 La. 747, 174 So.2d 515 (1965).
"`(4) And in determining compliance with these standards it is not the proof required for conviction which concerns us. Proof required to satisfy the requirement of reasonable belief or probable cause is less and is what the terms imply; probabilities and practical considerations of everyday life on which reasonable men could reasonably be expected to act. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Bourg, 248 La. 844, 182 So.2d 510 (1966).
"`(5) In such cases, because only factual issues are presented by the contentions, the setting in which the arrests took place becomes a factor of prime importance; facts and circumstances known to the arresting officers from which they might draw conclusions warranted by their training and experience become the focus of our attention *753 with due allowance for the discretion vested in the trial court.
"`(6) In addition to the authorities to which we have referred on this question, it is relevant to mention that flight has long been recognized as a legitimate ground for the inference of guilt, Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); State v. Melton, 37 La.Ann. 77, 79 (1885); Marr's Criminal Jurisprudence, Sec. 564 (1923 ed.). And it is not a search to see what is patent and obvious. Fagundes v. United States, 340 F.2d 673 (1st Cir. 1965.)'
"In State v. Dell, 258 La. 1024, 249 So. 2d 118, in covering the issue of the warrantless search of an automobile and particularly where an object visible to the senses was seized, your Honors said:
"`Where the issue involves justifying a warrantless search, the Courts have long distinguished between an automobile and a home or office. In Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. After surveying the law from the time of the adoption of the Fourth Amendment, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances which would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
"`Moreover, we have held that the constitutional guarantee against unreasonable search and seizure is not violated where the object seized is visible to the senses. That is, it is not a search to see what is patent and obvious. State v. Johnson, 249 La. 950, 192 So.2d 135 (1966). See also Fagundes v. United States, 340 F.2d 673 (1st Cir. 1965); 47 Am.Jur., Searches and Seizures, Sec. 20; 79 C.J.S. Searches and Seizures § 66, p. 829.'
"It is readily apparent from the testimony in the instant case both on the hearing for bail and on the hearing for suppression, of Jo Ann Buras, complainant, Mary Munson and Captain Louis E. Reichert, that the said Captain Reichert had probable cause to arrest the defendant in the belief that he had committed felonies against both Jo Ann Buras and Mary Munson. In addition thereto the said Capt. Reichert had further cause to effect an arrest on the basis of misdemeanors, i. e. traffic violations, that were committed in his presence. It was apparent to the Court that Capt. Reichert was on April 17, 1970 actively hunting for a person of a particular description, similarly described by Jo Ann Buras and Mary Munson, and driving a particular type vehicle, similarly described by Jo Ann Buras and Mary Munson, as a person who had accosted them on separate occasions of January 20, 1970 and January 27, 1970. Capt. Reichert was proceeding on information that Jo Ann Buras had been kidnapped and raped and on information that an attempt to kidnap Mary Munson had been made, both said crimes having been executed in similar patterns with a similarly described weapon. When Capt. Reichert did on April 17, 1970 perceive a person and a vehicle answering to a close degree that for which he was hunting, he commenced to follow the vehicle and did in fact see the vehicle turn into a parking lot and approach two young girls who were afoot. Because of this circumstance and when the person in the vehicle suddenly broke off contact by accelerating his vehicle in a precipitous fashion and running a a red light it was reasonable and probable for Capt. Reichert to assume that he had been discovered in his surveillance and that the defendant was attempting to get away. Capt. Reichert followed the vehicle into New Orleans where the defendant was apprehended with the assistance of New Orleans policemen.
*754 "The Court had no doubt as to the validity of the defendant's arrest and under the circumstances it would have justified a search of the defendant's vehicle without a warrant. As a matter of fact the gun that was seized from the defendant's vehicle was visible to Capt. Reichert without the necessity of a search and it is not considered a search to seize whatever is patent and obvious.
"Accordingly the Court denied the defendant's motion to suppress evidence gathered at the arrest of the defendant and subsequent thereto as a consequence of his arrest."
Bill of Exceptions No. 12 is without merit.
Bill of Exceptions No. 13 (Listed by defense counsel under Patent Errors Committed by the Trial Judge)
Bill of Exceptions No. 13 was reserved when the trial court denied defense counsel's request for the log of the St. Bernard Parish Sheriff's Office.
Defense counsel contends that he requested the log for the purposes of preparing his motion to suppress and effective examination of witnesses.
Counsel was not entitled to the log at the time they requested it. LSA-R.S. 44:1-3. The trial judge properly denied the request.
Bill of Exceptions No. 13 is without merit.
Bills of Exceptions Nos. 14, 15, 16 and 17
Bill of Exceptions No. 14 was reserved when the trial court allowed the State to introduce in evidence the following clothes of the victim, one white uniform dress, one half slip, one pair of underpants, and a series of white napkins.
Bill of Exceptions No. 15 was reserved when the trial court allowed the State to introduce in evidence one small black gun, allegedly taken from the car driven by the defendant.
Bill of Exceptions No. 16 was reserved when the trial court, over objection of defense counsel, permitted the State to introduce in evidence a photograph of a composite picture of the defendant.
Bill of Exceptions No. 17 was reserved when the trial court overruled defense counsel's objection to Louis Reichert's testimony as to the chain of evidence regarding the photograph of the composite picture of the defendant.
The above bills are not briefed. Discussion is therefore unnecessary. The evidence was relevant to the prosecution and properly identified. The trial judge committed no error in his rulings.
Bills of Exceptions Nos. 14, 15, 16 and 17 are without merit.
Bill of Exceptions No. 18 (Listed by defense counsel under Patent Errors Committed by the Trial Judge)
Bill of Exceptions No. 18 was reserved when the trial court denied defense counsel's motion for a mistrial based on the ground that the testimony of Louis Reichert was prejudicial to the defendant.
Herein, counsel contend that the bill of exceptions went to the prejudice created in the minds of the jury by the witness' testimony; they argue that no instruction given by the trial judge could cure or prevent the fact that the jury heard the alleged prejudicial testimony.
The per curiam of the trial judge explains the circumstances connected with the reservation of the instant bill and properly disposes of counsel's contentions. It recites:
"* * * The State in attempting to show how apprehension of the defendant was accomplished based on surveillance of particular locations for the presence of a particularly described person in a particularly described vehicle questioned the witness *755 Capt. Louis Reichert as follows, to-wit: (Pages 461-463, Vol. 3 of Transcript)
"BY MR. LIVAUDAIS:
"Q. Did you maintain a surveillance during this period of time?
"A. I did, sir.
"Q. Did you continue looking for this person in this picture?
"A. Yes, sir.
"Q. Concerning the description of the automobile, did that change at all after it had been established by Jo Ann to you, the identity of the automobile as fixed in your mind?
"A. No, sir.
"Q. Would you tell us exactly what type of automobile you were looking for?
"A. We were looking for a '69 or '70 late model automobile; frost colored or mist colored green with a tear-shaped looking windowwith the window in the back shaped like a tear. Also, it had light green seat covers, with light green headrest, with a radio recessed in the dashboard. The seat of this car was all in one. That means they didn't have any buckets or shift separating the passenger from the driver.
"Also, there was some type of seam coming down the seat in the front seat. Also, there was some type of medal hanging from the rear view mirror in the automobile.
"* * *
"Q. Now, Captain Reichert, did your investigation reach any conclusion?
"A. Yes, sir, we did.
"Q. What time of the evening were you back on this case?
"A. We were staking out the bus line between seven-thirty in the evening and eight-thirty or quarter to nine at night. And the reason we were doing that because we found that this suspect here was playing the bus lines.
"MR. FERNANDEZ:
"Objection, your Honor, to this line of testimony, and I move at this time for a mistrial on the basis that this witness continually testifies to matters that have not been proven before this Court.
"THE COURT:
"Let me instruct the Jury that insofar as any conclusion that was drawn, the Jury is to completely disregard it. Remove it from its mind. Motion for a mistrial is denied.
"* * *
"The defendant's objection was aimed at possible inferences by the witness that the defendant may have committed other crimes, which inference would accordingly prejudice the jury against the defendant and be in violation of his rights. The text of the answer certainly raises doubt as to whether any such inference was intended by the witness and it was apparently not an answer being solicited by the state. However, the Court in an abundance of caution sustained the objection and cautioned the jury to disregard any conclusions that Capt. Reichert's answer may have inferred.
"The Court takes the position that, in the first place, the prosecution cannot be defeated by answer of a witness for which the prosecution is not responsible. Also, there is no showing that the rights of the defendant were prejudiced and, finally, the Court, admonished the jury to disregard any inference of additional crimes as was suggested by counsel for the defendant in making his objection.
"It is submitted that if there was error it was harmless error (LSA-C.Cr.P. Art. No. 921)[4] and not a substantial violation of the *756 rights of the defendant and, accordingly, Bill of Exception No. 18 is without merit."
Bill of Exceptions No. 18 is without merit.
Bills of Exceptions Nos. 19, 20, 21, 22, 23, 25 and 26
Bill of Exceptions No. 19 relative to cross examination by defense counsel was not briefed. Discussion is therefore unnecessary.
Bill of Exceptions No. 20 relative to the testimony of Captain Milton Cox is not briefed. Discussion is therefore unnecessary.
Bill of Exceptions No. 21 relative to Officer Stephen London's testimony is not briefed. Discussion is therefore unnecessary.
Bill of Exceptions No. 22 relative to Chief Deputy Wallace Ansardi's testimony is not briefed. Discussion is therefore unnecessary.
Bill of Exceptions No. 23 relative to the victim's testimony on re-direct examination is not briefed. Discussion is therefore unnecessary.
Bill of Exceptions No. 25 relative to the testimony of defense witness Nelson Nunez is not briefed. Discussion is therefore unnecessary.
Bill of Exceptions No. 26 relative to the testimony of defense witness Nelson Nunez on re-direct examination is not briefed. Discussion is therefore unnecessary.
All bills, supra, are without merit.
Bills of Exceptions Nos. 27, 28, 29, 30, 31, 32 and 33 (Listed by defense counsel under Patent Errors Committed by the Trial Judge)
The above bills were taken when the trial court refused to give special jury charges presented by defense counsel to the jury.
Herein, counsel for the defendant only complains of Bill of Exceptions No. 30 which was reserved when the trial judge refused to instruct the jury that ransom is necessary for the crime of aggravated kidnapping.
The requested charge provided in part:
"* * * It is an essential element of the offense of kidnapping that the taking or detention of the person kidnapped be without lawful authority and that there be intentions by the person doing the kidnapping to extract from the victim or other persons something of value. In other words, there must be a ransom to have the crime of aggravated kidnapping."
In his general charge to the jury, the trial judge stated: "An essential element of the crime of Aggravated Kidnapping is the intent to force the victim, or some other person, to give up anything of apparent present or prospective value or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control."
LSA-R.S. 14:44, Aggravated Kidnapping, does not contain the word "ransom." We conclude that the trial judge did not commit reversible error in refusing to give the special charge supra. His general charge completely covered the law with respect to intent and kidnapping. Since the essence of the charge was contained in the general charge, defendant suffered no prejudice. See, State v. McClure, 258 La. 999, 249 So.2d 109; State v. Fox, 251 La. 464, 205 So.2d 42.
*757 Bills of Exceptions Nos. 27, 28, 29, 30, 31, 32 and 33 are without merit.
Bill of Exceptions No. 34
Bill of Exceptions No. 34 was reserved when the trial court denied defense counsel's motions in arrest of judgment and for a new trial.
The motions raise matters that were discussed in the bills of exceptions supra. Consideration of Bill of Exceptions No. 34 is therefore unnecessary.
At the present time, the mandate of the United States Supreme Court in the case of Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972), requires the imposition of a sentence other than death. Therefore, for the reasons assigned, the conviction is affirmed; the death sentence imposed upon defendant is annulled and set aside, and the case is remanded to the Twenty-Fifth Judicial District Court with instructions to the trial judge to sentence the defendant to life imprisonment.
DIXON, J., concurs.
BARHAM, J., concurs in the decree.
TATE, J., concurs and assigns reasons.
TATE, Justice (concurring).
I concur in the opinion. My chief reservations have to do with the denial of the defendant to access to scientific blood testing to disprove his association with the crime (Bill Nos. 6 and 34), but under the particular facts and evidence (not discussed in the majority opinion) I find no error or prejudice. Also, some of the language about the in-court identification of the defendant does not, in my opinion, rightly summarize applicable principles; but, under the present facts, each of the identifications may be regarded as based on independent observation and not upon any (unproven) impermissibly suggestive identification procedures.
NOTES
[1] In substance, the instant facts of record correctly related in the State's brief are to the effect that on the night of January 20, 1970, Jo Ann Buras (Wigley) was forced at gunpoint in St. Bernard Parish to enter an automobile driven by a then unknown assailant, after she had alighted from a bus on her way home from work. The armed assailant drove to a secluded section in St. Bernard Parish where he raped her. At the time of this incident she was 17 years of age and unmarried.

Later on that same night she gave a detailed description of the assailant, his automobile, and the gun, to Captain Reichert of the St. Bernard Parish Sheriff's Office, and also made a "composite" picture of the assailant's face.
Armed with these tools Captain Reichert began an extensive search and surveillance for a person and automobile fitting the descriptions, together with other St. Bernard Parish Deputies and members of the New Orelans Police Department who were also searching for a person and automobile of this description relative to similar incidences in New Orleans.
On April 17, 1970, while still maintaining his surveillance, Captain Reichert saw and recognized the person he was seeking (later identified as the defendant herein) and automobile matching the descriptions, approaching two young girls in the vicinity of the St. Bernard Bank; the defendant took off at a high rate of speed when Captain Reichert approached him, and a high speed chase ensued, in which the defendant ran through a red light at Mehle Street, and into New Orleans on St. Claude Avenue.
New Orleans Patrolmen Bruno and Landon, who were also on the lookout for a person and automobile of the same description as that of the defendant and his automobile, observed the defendant's reckless operation of his vehicle at a high rate of speed, and also took off after him in close pursuit. The New Orleans Police vehicle forced defendant to stop, and they apprehended and handcuffed the defendant as Captain Reichert recovered a small black pistol which was in clear view on the floorboard of defendant's automobile.
The defendant was subsequently booked, indicted, tried and convicted of aggravated rape and aggravated kidnapping of Jo Ann Buras (Wigley).
At the Bail hearing and at the trial the State produced testimony of two additional girls pursuant to LRS 15:445 and 446, who testified to identical incidences with the defendant.
Mary Munson testified that on January 27, 1970, a person whom she positively identified in Court as the defendant drove up to her at a bus stop, in an automobile identical to defendant's, and attempted to force her into his automobile with a pistol identical to the defendant's pistol, which was introduced into evidence.
Melony Carmouche testified that on April 9, 1970, a person whom she positively identified in Court as the defendant, using the identical mode of operation as in the Buras and Munson incidences, in an automobile identical to defendant's, forced her into his automobile, using a pistol identical to defendant's, and forced her to commit sex acts with him.
Both girls, just as Jo Ann Buras (Wigley) did, positively identified the defendant in Court, and also his automobile and gun; and further described the defendant's mode of operation as being identical in all three incidences.
[2] The trial judge charged the jury in part as follows: "Testimony tending to prove identity is to be scrutinized with extreme care. No class of testimony is more uncertain and less to be relied upon than that of identity. The possibility of human error or mistake, and the probable likeness or similarity of objects and persons are elements that you must act upon in considering testimony as to identity. You must carefully consider these factors passing upon the credibility that you attach to the witnesses's testimony, and you must be satisfied beyond a reasonable doubt as to the accuracy of the witnesses's identification of the defendant in the absence of prior familiarity with him is merely the expression of an opinion by a witness and is to be regarded by the jury in the same light as any other opinion that may be expressed by a witness. The identity of the defendant must be proven with that degree of moral certainty that amounts to proof beyond a reasonable doubt, so as to preclude any probability of a mistake having been made. Evidence of identity should be as certain as human recollection under the most favorable circumstances will permit. * * *
[3] "When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." LSA-R.S. 15:446.
[4] "A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right." Art. 921, LSA-C.Cr.P. See, also, State v. Williams, 260 La. 941, 257 So.2d 668 (1972), wherein we said: "Every error in the admission of evidence, however, does not require that the conviction be set aside. See State v. Maiden, 258 La. 417, 246 So.2d 810 (1971). The test for reversible error is set forth in the Louisiana Code of Criminal Procedure."